BRUNDY, RESPONDENT, *v.* MAYFIELD ET AL., APPELLANTS.

[Submitted January 14, 1895. Decided January 21, 1895.]

FORFEITURES—*Construction of statute.*—In order that a forfeiture may be worked under a statute of forfeitures the facts constituting the forfeiture or laying the foundation for it must exist, and the statute must be strictly construed.

MINING CLAIM—*Forfeiture of co-owner's interest.*—The interest of one co-owner of a mining claim is not forfeited to the other co-owners by the process of "advertising him out"; that is, by giving him the notice provided for in section 2324 of the Revised Statutes of the United States, when he is not in fact delinquent in contributing his proportion of the annual expenditures required by said section, or, in the common language of prospectors, has done his share of the "representation work." In such case the very foundation of forfeiture—namely, failure to "represent"—is wanting.

SAME—*Application for patent—Title held in trust for true owner.*—Where part of the co-owners of a mining claim apply for a United States patent to themselves, excluding one co-owner, the latter need not file an adverse claim in the land-office under section 2325 of the United States Revised Statutes, in order to prevent his title being finally acquired by the former, since they become trustees for him on obtaining the patent in their own names.

COTENANCY—*Acquisition of outstanding title.*—Cotenants stand in a relation to each other of mutual trust and confidence, so that neither will be permitted to act in hostility to the other in reference to the joint estate, and a distinct title acquired by one will inure to the benefit of all.

*Appeal from Second Judicial District, Silver Bow County.*

ACTION to have the defendants declared to be trustees of the plaintiff's undivided one-third interest in a mining claim. Judgment was rendered for plaintiff by McHATTON, J. Affirmed.

Statement of the case by the justice delivering the opinion:

The plaintiff brought this action for the purpose of having defendants Mayfield and Upton declared to be trustees of the plaintiff's undivided one-third interest in the Sioux Chief mining claim, and for a judgment that said Mayfield and Upton

execute to plaintiff a conveyance of said undivided one-third interest in said claim. The case was tried to the court without a jury. Findings were filed, and judgment entered for plaintiff. Some other defendants were joined in the complaint, but do not seem to be concerned in this appeal.

The plaintiff and defendants claim from a common source of title, which is the location of the Sioux Chief claim on April 9, 1876, by said Mayfield and Upton, and one John McClaggen. McClaggen conveyed to plaintiff March 7, 1877. At that time Mayfield, Upton, and Brundy therefore each owned an undivided one-third in the claim.

The defendants rely upon their allegations, and attempted proof, that plaintiff forfeited his said one-third interest to them by a failure to do the required assessment work in the years 1877, 1878, 1879, 1880, and 1881. They served upon him what they claimed was a notice of his forfeiture in the year 1877, under the provisions of section 2324 of the Revised Statutes of the United States; and they also published an alleged forfeiture notice against plaintiff for the years 1877, 1878, 1879, 1880, and 1881. The defendants Mayfield and Upton applied for and obtained a United States patent for said claim, excluding plaintiff from the application and patent. In their said application they used an abstract of title in order to show to the land-office that they were the owners of the claim. This abstract contained the alleged notices of forfeiture, duly verified. These notices were relied upon in the land-office to show that the plaintiff's one-third interest was forfeited to the applicants. By this means the United States patent came to Mayfield and Upton, to the exclusion of plaintiff. But plaintiff alleged in his pleadings, and attempted to show by his proof, that in fact he had not forfeited his interest in said mining claim, and that he never parted with his title to the same, and is still the equitable owner thereof, and that defendants are his trustees of the legal title of said one-third interest. He therefore asks a conveyance from them to him of said interest. On the trial all the material facts were found by the court in favor of plaintiff, and judgment was rendered for him in accordance with the prayer of his complaint. The defendants appeal. The findings, as far as it is necessary to

consider them, may be more conveniently stated, with their examination, in the opinion below.

*Robinson & Stapleton*, for Appellants.

The evidence in this case shows that appellants submitted all the facts and notices of forfeiture to the land-office, without fraud, deceit, or misrepresentation, and that said land officers passed upon said facts and notices, and upon the title of the appellants and their right to receive a patent to the said premises, and we contend that the action of said officers was final, and cannot be reviewed or called in question by any court. (*Lee* v. *Johnston,* 116 U. S. 48; *Johnson* v. *Fowley,* 13 Wall. 72; *Shepley* v. *Cowan,* 91 U. S. 330; *Moore* v. *Robbins,* 96 U. S. 530; *Quinby* v. *Conlan,* 104 U. S. 420.) The court erred in refusing to find the facts and conclusions of law asked by appellants, for the reason that said findings of fact are fully sustained by all the evidence, and the conclusions of law asked by appellants naturally flow from all the facts and circumstances of the case.

*John T. Baldwin,* for Respondent.

We maintain that the evidence introduced on the trial of this cause amply proves that the respondent contributed his proportionate share of the required annual improvements or expenditures on the said mining claim, and that the law applicable to the facts and circumstances did not require him to file, make, or prosecute an adverse claim or suit to said application for a patent. The "co-owner" clause of section 2324 of the United States Revised Statutes does not *per se* transfer one cotenant's interest in a mining claim to another, or cast said estate upon him merely by the service of the notice therein specified. (*Boyd* v. *Talbert,* 12 Ohio, 212; *Smith* v. *Whitbeck,* 13 Ohio St. 471; *Gage* v. *Bates,* 40 Cal. 384; *O'Connor* v. *Kelly,* 41 Cal. 432; *Van Rensselaer* v. *Jewett,* 2 N. Y. 141.) "No one shall be deprived of his property without due process of law." This imports a judicial trial, and, "without due process of law, that is without judicial investigation, no act of legislation can deprive a man of his property, and, in all civil cases, an act of the legislature is wholly inoperative to take

from a man his property." (*Taylor* v. *Porter,* 4 Hill, 140; 40 Am. Dec. 274; *Emburry* v. *Connor,* 3 N. Y. 511; 53 Am. Dec. 325; *Wynehamer* v. *People,* 13 N. Y. 395; *Dartmouth College case,* 4 Wheat. 581; *In re John and Cherry Streets,* 19 Wend. 676.) And "a mining claim perfected under the laws is property in the highest sense of that term, which may be bought, sold, and conveyed, and will pass by descent," and this was spoken relative to the title acquired to a mining claim merely by location thereof. (See *Forbes* v. *Gracey,* 94 U. S. 762; *Belk* v. *Meagher,* 104 U. S. 279; *Silver Bow etc. Min. Co* v. *Clark,* 5 Mont. 378.) And, in order to enforce the forfeiture of the interest of a tenant in common of a mining claim, some appropriate suit must be undertaken to liquidate the demand and sell his interest, or there must be clear and unequivocal proof of abandonment. (*Warring* v. *Crow,* 11 Cal. 366.) In all cases of involuntary alienation of lands the statute must be strictly pursued, or no title will be conveyed and the sale will be void. (3 Washburn on Real Property, 210; 2 Washburn on Real Property, 6, and notes.) If the relation of tenancy in common subsisted between the appellants and the respondent at the time the application for the patent to said mining claim was made, then the respondent should have been included in such application. (U. S. Rev. Stats., § 2325.) "A locator of a mining claim need not take any steps to purchase the land or obtain a patent for it and cannot be compelled to be a purchaser thereof." (*Shafer* v. *Constans,* 3 Mont. 371; *Chapman* v. *Toy Long,* 4 Saw. 281.) If the appellants proceeded to patent without the respondent's consent while they were tenants in common in said mining claim, whatever title the appellants acquired by virtue of said proceeding would inure to the respondent's benefit. In such a case equity will imply, declare, and enforce a constructive trust in favor of the respondent. (*Lakin* v. *Sierra etc. Min. Co.,* 25 Fed. Rep. 341; *Wilson* v. *Castro,* 31 Cal. 420; *Salmon* v. *Symonds,* 30 Cal. 301; *Bludworth* v. *Lake,* 33 Cal. 256; *Hardy* v. *Harbin,* 4 Saw. 549; *Bohall* v. *Dilla,* 114 U. S. 47; *St. Louis etc. Refining Co.* v. *Kemp,* 104 U. S. 636; *Johnson* v. *Towsley,* 13 Wall. 72; *Moore* v. *Robbins, supra; Marquez* v. *Frisbie,* 101 U. S. 473; *Rector* v. *Gibbon,* 111 U. S. 276, 291; *Monroe*

*Cattle Co.* v. *Becker,* 147 U. S. 47; *Butte Hardware Co.* v. *Cobban,* 13 Mont. 351; *Hallett* v. *Collins,* 10 How. 174; *Van Horner* v. *Fonda,* 5 Johns. Ch. 388; *Rothwell* v. *Dewees,* 2 Black, 613; *Lloyd* v. *Lynch,* 28 Pa. St. 419; 70 Am. Dec. 137; *Downer* v. *Smith,* 38 Vt. 464; *Bracken* v. *Cooper,* 80 Ill. 229; *Turner* v. *Sawyer,* 150 U. S. 578; Freeman on Cotenancy, § 154.) A tenant in common, claiming title under the same location, does not have such an adverse claim as is provided for in the federal statutes, and he waives nothing by failure to file an adverse claim or protest in the land-office to an application for a patent based on said location and intended to confirm the title acquired thereby. (U. S. Rev. Stats., §§ 2325, 2326; *Doherty* v. *Morris,* 16 Pac. Rep. 911; *Lakin* v. *Sierra etc. Min. Co.,* 11 Saw. 238; *Hunt* v. *Patchin,* 35 Fed. Rep. 816; *Suessenbach* v. *First Nat. Bank,* 5 Dak. 477; *Turner* v. *Sawyer, supra.*) "Work done outside of a claim, if done for the purpose and as a means of taking out the ore, or prospecting and developing the claim, such as running tunnels, drifts, or drains, or building flumes or works necessary and proper for mining the claim, would be as available for holding the claim as if done within its boundaries." (*Remington* v. *Bandit,* 6 Mont. 140; *Mining Co.* v. *Callison,* 5 Saw. 457; *McGarrity* v. *Byington,* 12 Cal. 426; *Chambers* v. *Harrington,* 111 U. S. 350.) A new trial ought not to be granted in this case, the findings being fully justified by the evidence, and the conclusions of law being correct. But even in cases where there is a substantial conflict of evidence this court will not disturb the verdict of the jury or findings of fact made by the trial court. (*Lincoln* v. *Rodgers,* 1 Mont. 217; *Travis* v. *McCormick,* 1 Mont. 349; *Ming* v. *Truett,* 1 Mont. 327; *Sanders* v. *Farwell,* 1 Mont. 599; *Orr* v. *Haskell,* 2 Mont. 229; *Beck* v. *Beck,* 6 Mont. 286; *Carron* v. *Wood,* 10 Mont. 501, 506; *Mattock* v. *Goughnour,* 11 Mont. 265.)

DE WITT, J.—The claim by defendants of a forfeiture to them of plaintiff's one-third interest is based upon their contention that in the years 1877, 1878, 1879, 1880, and 1881, they did the full amount of the annual labor and expenditure for each of said years, and that plaintiff failed to contribute

his proportion of the expenditures required by section 2324 of
the Revised Statutes of the United States, for said years, and
that defendants "advertised him out," as it is commonly called;
that is, gave to him the notice provided for in said section of
the Revised Statutes of the United States.

Our first inquiry will be to ascertain whether plaintiff's
interest did indeed become forfeited to defendants.   Section
2324 of the Revised Statutes of the United States, after pro-
viding for labor and improvements of a certain value to be
placed upon every mining claim in each year, then provides as
follows: "Upon the failure of any one of several co-owners
to contribute his proportion of the expenditures required
hereby, the co-owners who have performed the labor or made
the improvements may, at the expiration of the year, give
such delinquent co-owner personal notice in writing, or notice
by publication in the newspaper published nearest the claim,
for at least once a week for ninety days, and if, at the expira-
tion of ninety days after such notice in writing or by publica-
tion, such delinquent should fail or refuse to contribute his
proportion of the expenditure required by this section, his
interest in the claim shall become the property of his co-owners
who have made the required expenditures."

This is a statute of forfeitures.   That the forfeiture may be
worked, the facts constituting it, or laying the foundation
for it, must exist.   The statute must be strictly construed.
(*Turner* v. *Sawyer*, 150 U. S. 585.)

If the interest of an owner in a mining claim is to be for-
feited to his co-owners under the provisions of this statute cer-
tain events must occur, and certain acts must be performed by
those seeking the forfeiture.   Upon the reading of the statute
the first words which we encounter are "upon the failure of any
one of several co-owners to contribute his proportion of the
expenditures required hereby."   Then the co-owners may take
the course laid down in the remaining part of the section.   But
first, and as a foundation upon which to seek forfeiture, it must
be true that the alleged forfeiting owner has failed to contribute
his proportion of the expenditures required by section 2324.
But in the case at bar that was not true.   The very contrary
was the fact.   The court found as follows: "That ever since

the plaintiff became and was invested as aforesaid with the title to said undivided one-third of said premises he has done and performed all things needful and requisite to perfect, keep alive, and maintain his possessory right and title thereto, and that he fully and properly 'represented' or did the annual 'assessment work' in and to his said title and interest therein, by doing and performing the labor and making the improvements on said claim for the purpose and with the intent of prospecting and developing the same, to the amount and of the value of at least thirty-three and $33\frac{1}{3}$ dollars ($33.33$\frac{1}{3}$) in and during each and every of the years 1877, 1878, 1879, 1880, and 1881 (the years wherein the defendants claim the plaintiff made default therein, by reason whereof they claim a forfeiture of his said right, title, and interest in and to said lode claim, accrued and passed to them), and during each and every of the years subsequent to the said date of the location thereof, at the time, at the place, and in the manner required by law for the purpose aforesaid.  That said improvements consisted of a shaft, dug, excavated, and sunk thereon, and timbering the same."

There was some conflict in the evidence upon this point. We have carefully read the whole record, and shall not rehearse the evidence, but will say that it was amply sufficient to sustain the finding.  Therefore, it is the fact in this case that the plaintiff did not, during the years named, fail to contribute his proportion of the annual expenditures required by section 2324.  The very first requirement of that section, as a basis of forfeiture, did not exist.

We have therefore left for consideration this situation, as follows: Three men, Mayfield, Upton, and Brundy, together own a mining claim; Brundy has, during all the years in question, contributed his proportion of the annual expenditures required by law upon each mining claim, or, in the common language of prospectors, he has done his share of the "representation work."  Under these facts, if M. and U. publish a forfeiture notice against B., does this fact divest B. of the title, and does it transfer said title to M. and U?  Without hesitation we say, No.  The very foundation of forfeiture is wanting; that is, the failure of B. to represent.  The forfeiture notice

is not true. The ground claimed for a forfeiture does not exist. To hold otherwise would lead to curious results. For example, it is the fact that M., U., and B. each do their full share of representation for a given year; and at the end of the year several notices are published, which set out the matters stated in section 2324. There may be a half dozen such notices; for instance, M. against U. and B; U. against M. and B; B. against M. and U; U. and B. against M; M. and B. against U; M. and U. against B. But the fact is that none of these notices are true, and not being true, to declare that they worked forfeitures, of course, is an absurdity. But if one works a forfeiture, why not all? The absurdity is apparent in the illustration given, and it is just as apparent in the actual single instance in the case at bar, that is, the attempted notice of M. and U. against B. It would certainly be a very economical method of acquiring titles to mining claims, if any owner could publish or serve a notice, as contemplated by section 2324, on his co-owners, and barely, by such notice, acquire their titles, when the facts upon which such notices may be given do not exist. But the discussion runs into the ridiculous. It is time to close it.

Our conclusion is, that the served and published notices did not, for the reasons above stated, forfeit Brundy's interest to Mayfield and Upton. (*Turner* v. *Sawyer, supra.*)

It is to be observed that we decide this point simply upon the ground that it was found by the court, and the finding remains undisturbed, that the notices had not the required foundation of fact to support them. If the facts in this case had been that the notices were wholly true, that the necessary facts were all present, that the notices were regular and formal in their matter and service, then an important and interesting question would have been presented to us, to which counsel have invited our attention, that is to say, whether, if the full requirements of the forfeiture notice of section 2324 are strictly complied with, then is a forfeiture worked, and a transfer of title accomplished, *ipsis factis*, or must the forfeiture be declared and adjudged by some appropriate action? But the facts of this case do not require a consideration of that subject. Brundy not being "advertised out," and his interest not being

forfeited, but he still owning the same, when application for patent is made by his co-owners, the case therefore comes to this point: There are three undisputed co-owners of a mining claim, namely, Mayfield, Upton, and Brundy. Mayfield and Upton apply for and obtain a United States patent to themselves, excluding Brundy. Two questions are therefore left. 1. Must Brundy file an adverse claim in the land-office (which he did not do), in order to prevent his title being finally acquired to themselves by Mayfield and Upton, through the process of applying for and obtaining United States patent? If Brundy need not file such adverse claim, then: 2. Are Mayfield and Upton trustees for Brundy? Both of these inquiries are fully answered in the last case in the United States supreme court which we have seen upon this subject (*Turner* v. *Sawyer, supra*), a case very similar, in its facts, to the case at bar. As to the necessity for Brundy to file an adverse claim in the United States land-office, we quote the following from the opinion of Mr. Justice Brown in that case:

"It is contended, however, that Sawyer is precluded from maintaining this bill by the fact that he filed no adverse claim to the lode in question under the Revised Statutes, section 2325. This section declares that 'if no adverse claim shall have been filed with the register and receiver of the proper land-office at the expiration of the sixty days of publication' of notice of application for patent, 'it shall be assumed that the applicant is entitled to a patent, upon the payment to the proper officer of five dollars per acre, and that no adverse claim exists; and thereafter no objection from third parties to the issuance of a patent shall be heard, except it be shown that the applicant has failed to comply with the terms of this chapter.' By section 2326, 'where an adverse claim is filed during the period of publication, it shall be upon oath of the person or persons making the same, and shall show the nature, boundaries and extent of such adverse claim,' etc. In this case there was no conflict between different locators of the same land, and no contest with regard to boundaries or extent of claim, such as seems to be contemplated in these provisions. Turner did not claim a prior location of the same lode, and made no objection to the boundaries or extent of Sawyer's

claim, but asserted that he had acquired Sawyer's title by legal proceedings. The propriety of such claim was not a question which seems to have been contemplated in requiring the 'adversing' of hostile claims. In this particular the case of *Garland* v. *Wynn*, 20 How. 6, is in point. In that case it was held that where the register and receiver of public lands had been imposed upon by *ex parte* affidavits, and a patent has been obtained by one having no interest secured to him in virtue of the pre-emption laws, to the destruction of another's right who had a preference of entry, which he preferred and exerted in due form, but which right was defeated by false swearing and fraudulent contrivance brought about by him to whom the patent was awarded, that the jurisdiction of the courts of justice was not ousted by the regulations of the commissioner of the general land-office. 'The general rule is,' says Mr. Justice Catron, 'that where several parties set up conflicting claims to property, with which a special tribunal may deal, as between one party and the government, regardless of the rights of others, the latter may come into the ordinary courts of justice and litigate the conflicting claim.' Such was the case of *Comegys* v. *Vasse*, 1 Pet. 193, 212, and the case before us belongs to the same class of *ex parte* proceedings; nor do the regulations of the commissioner of the general land-office, whereby a party may be held to prove his better claim to enter, oust the jurisdiction of the courts of justice. We announce this to be the settled doctrine of this court. (See also *Monroe Cattle Co.* v. *Becker, supra,* and cases cited.)"

As to Mayfield and Upton being trustees for Brundy, and required to convey to Brundy, the same authority says: "Whether he procured such receiver's receipt by fraudulent and false representations, as charged in the bill, it is unnecessary to determine. It is clear, to put upon it the construction most favorable to him, that he acted under a misapprehension of his legal rights. There is nothing in the record showing that he ever became possessed of Sawyer's interest in the lode. Assuming that, under the proceedings in the Teal suit, he had acquired the legal title to Sanderson's interest, he became merely a tenant in common with Sawyer, and his subsequent acquisition of the legal title from the land-office inured to the

benefit of his cotenants as well as himself. It is well settled that cotenants stand in a certain relation to each other of mutual trust and confidence; that neither will be permitted to act in hostility to the other in reference to the joint estate; and that a distinct title acquired by one will inure to the benefit of all. A relaxation of this rule has been sometimes admitted in certain cases of tenants in common who claim under different conveyance and through different grantors. However that may be, such cases have no application to the one under consideration, wherein a tenant in common proceeds surreptitiously, in disregard of the rights of his cotenants, to acquire a title to which he must have known, if he had made a careful examination of the facts, he had no shadow of right. We think the general rule, as stated in *Bissell* v. *Foss*, 114 U. S. 252, 259, should apply; that 'such a purchase' (of an outstanding title or encumbrance upon the joint estate for the benefit of one tenant in common) 'inures to the benefit of all, because there is an obligation between them, arising from their joint claim and community of interest, that one of them shall not affect the claim to the prejudice of the others. (*Rothwell* v. *Dewees, supra; Van Horne* v. *Fonda, supra; Lloyd* v. *Lynch, supra; Downer* v. *Smith, supra.*)' A title thus acquired the patentee holds in trust for the true owner, and this court has repeatedly held that a bill in equity will lie to enforce such trust. (*Johnson* v. *Towsley, supra; Moore* v. *Robbins, supra; Marquez* v. *Frisbie, supra; Rector* v. *Gibbon, supra; Monroe Cattle Co.* v. *Becker, supra.*" See also *Butte Hardware Co.* v. *Cobban, supra.*) These matters discussed seem to dispose of this appeal.

The judgment of the district court directed that an accounting be had, and that it be ascertained what expense had been incurred by Mayfield and Upton in obtaining the patent, and that, upon payment of one-third of the same, or a legal tender thereof, by Brundy, that said Mayfield and Upton should execute and deliver to him a deed conveying said one-third interest.

The judgment of the district court is affirmed.

*Affirmed.*

PEMBERTON, C. J., and HUNT, J., concur.