THE HON. WILLIAM L. HOLLOWAY,
THE HON. SYDNEY SANNER,
} Associate Justices.

O'HANLON, APPELLANT, *v.* RUBY GULCH MINING CO., RESPONDENT.

(No. 3,273.)

(Submitted September 18, 1913. Decided October 11, 1913.)

[135 Pac. 913.]

*Mining Claims—Cotenants—Annual Representation Work— Failure to Contribute — Abandonment — Laches — Adverse Claims — Quieting Title — Ouster — Remedies—Ejectment— Theory of Case—Appeal—New Trial.*

New Trial—Order Granting—Affirmance, When.

1. An order granting a new trial, which does not indicate upon which of several grounds assigned it was based, will be affirmed if justifiable upon any one of them.

Mining Claims—Annual Representation Work—Default of Co-owner—Forfeiture—Notice—Administrators—Insufficiency.

2. Service of notice upon the administrator of the estate of one of several co-owners in an unpatented mining claim, to the effect that unless he should, within ninety days, pay his proportion of the amount expended by his co-owners in doing the annual representation work upon the claim, his interest would be declared forfeited under the provisions of section 2324, United States Revised Statutes, was insufficient, said section requiring service upon the then actual co-owner,—in this instance the heirs of the intestate, and not the administrator.

[As to discovery of mineral in mining claim and rights of locator prior thereto, see note in 139 Am. St. Rep. 154. As to the abandonment and forfeiture of mining claims, see note in 87 Am. St. Rep. 403.]

Same—Representation Work—Failure to Contribute Toward Payment of Expense—Statute of Forfeiture—Construction.

3.   Section 2324, United States Revised Statutes, providing that the interest of one of several co-owners in a mining claim shall, upon due notice, become the property of his co-owners upon his failure to contribute his proportion of the expenditure incident to the doing of the annual representation work upon the claim, is one of forfeiture and must be strictly construed.

Same—Estoppel—Laches—Abandonment—Evidence—Admissibility.

4.   While evidence that the heirs of a delinquent co-owner in an unpatented mining claim had been made aware of the fact that the administrator of the estate of their intestate had been served with notice calling for contribution toward the payment of the cost of the annual representation work on the claim, under penalty of forfeiting "his interest" therein, was immaterial (see paragraph 2, *supra*), it was both competent and material, under the circumstances of the case, as tending to show laches on their part in asserting their claims to the interest declared forfeited, as well as an abandonment thereof.

Same—Abandonment—Failure to Contribute to Cost of Representation Work.

5.   Though one of several cotenants in a mining claim cannot by any course of conduct on his part abandon the claim so as to destroy the interests of his cotenants and cause it to revert to the government, he may abandon his own interest and should be held to have done so where, with knowledge that his cotenants have performed the annual representation work upon the claim and are developing it, he fails to contribute his proportion of the expense and shows by his conduct that he has renounced his right, reasserting it only after development has shown the claim to be valuable.

Trial—Theory of Case—Appeal.

6.   Where defendant made no objection to the trial of a cause as one to quiet title to a mining claim under section 6870, Revised Codes, he will not be heard on appeal to insist that it should have been tried as an adverse suit under section 2326, United States Revised Statutes.

Mining Claims—Ouster of Cotenant—Remedies.

7.   While a cotenant who has been excluded from a mining claim may bring an adverse suit to have his rights determined, so that the patent will convey directly to him whatever interest he may have, he is not bound to do so, but may wait until the patent proceedings are concluded, and then have the patentee declared a trustee for him to the extent of his interest.

[As to cotenancy in mines, see note in 91 Am. St. Rep. 851.]

Same—Quieting Title—Ejectment—When Proper Remedy.

8.   The remedy of one claiming to have been wrongfully ousted from a mining claim then in possession of defendant, who asserts an adverse claim, is an action in ejectment and not one to quiet title under section 6870, Revised Codes, which confers power upon courts of equity to entertain actions in which the defendant is asserting an adverse claim while the plaintiff is in possession, and actions in which neither plaintiff nor defendant is in possession, and the latter is asserting the adverse claim.

*Appeal from District Court, Choteau County; Jno. W. Tattan, Judge.*

ACTION by Thomas J. O'Hanlon and another against the Ruby Gulch Mining Company. From an order granting a motion for new trial plaintiffs appeal. Affirmed.

*Messrs. Cooper & Stephenson,* for Appellant, submitted a brief; *Mr. Samuel Stephenson* argued the cause orally.

Before one cotenant can acquire the interest of his cotenant in a mining claim, he must either proceed strictly in accordance with the provisions of section 2324, United States Revised Statutes ( 5 Fed. Stats. Ann. 19, U. S. Comp. Stats. 1901, p. 1426), or he must hold the entire claim adversely for a period of ten years. The relation of co-owners in a mining claim is such that the doing of the annual representation work by one inures to the benefit of all. And since Carter did the representing each year down to the time when defendant bought Carter out, the title of plaintiffs to the O'Hanlon one-third interest was as good as Carter's title to the two-thirds interest. Mere lapse of time, short of the statute of limitations, does not constitute laches. There must be some act or omission of the party to whom laches is sought to be attributed which affects the other party so unfavorably as to render it inequitable to excuse the delay. What would be laches in one case might not constitute such in another. The question is one addressed to the sound discretion of the court, depending upon all of the facts of the particular case. (*The Queen of the Pacific,* 61 Fed. 213; *Babb* v. *Sullivan,* 43 S. C. 436, 21 S. E. 277.) Laches is defined as inexcusable delay in asserting a right. One who acts as soon as possible after learning of his right, or that his right has been invaded, cannot be charged with delay. (*Byrne* v. *Schuyler Electric Mfg. Co.,* 65 Conn. 336, 28 L. R. A. 304, 31 Atl. 833.) Under the Code of Procedure it is held that laches is an equitable defense, which, unless disclosed by the complaint, must be proved by the answer, and the mere appearance of the lapse of time is not sufficient to raise the issue. (*Gay* v. *Havermale,* 27 Wash. 390, 67 Pac. 804.)

In order to make a notice of forfeiture valid, it must be served upon the co-owners, and our contention is that the administrator of the estate was not a co-owner, but that the heirs of Thomas O'Hanlon, deceased, were the owners of whatever interest he had in said mining claim at the time of his death. (*Elder* v. *Horseshoe Min. etc. Co.*, 9 S. D. 636, 62 Am. St. Rep. 895, 70 N. W. 1060; *Billings* v. *Aspen Min. etc. Co.*, 51 Fed. 338, 2 C. C. A. 252.)

*Messrs. H. G. & S. H. McIntire*, for Respondent, submitted a brief; *Mr. H. G. McIntire* argued the cause orally.

Plaintiffs, as the heirs of Thomas O'Hanlon, deceased, had either actual or constructive knowledge of what property their father died seised of. Actual knowledge appears from the testimony, constructive knowledge from the record of the deeds to their father. It was therefore their duty to make inquiry as to the facts relating to their title, if any, and they are charged with notice of the facts which such inquiry would have elicited. This is peculiarly so in cases involving mining property. (*Johnston* v. *Standard Min. Co.*, 148 U. S. 360, 37 L. Ed. 480, 13 Sup. Ct. Rep. 585, 17 Morr. Min. Rep. 554; *Mantle* v. *Speculator Min. Co.*, 27 Mont. 473, 71 Pac. 665.) Such inquiry would have disclosed the claim to full ownership, first by Carter, and second by his grantee; that there was a hostile holding to and a repudiation of the former cotenancy; that those persons, respectively, were claiming the property solely, were in exclusive possession of the same, and were expending large sums of money in its development, of which they also had actual knowledge. In addition to this they knew, or should have known, had they made the inquiry, that this was an unpatented mining claim; that the federal statute requires $100 per annum of improvements to be made on such a claim; that they had paid no portion of such sum, nor offered so to do. Further, on inquiry at the county clerk's office they would have ascertained that it was asserted this claim had been advertised out. As to the duty to inquire, see *Delmoe* v. *Long*, 35 Mont. 139,

88 Pac. 778; *Fuller* v. *Montague,* 59 Fed. 212, 8 C. C. A. 100; *Hardt* v. *Heidweyer,* 152 U. S. 547, 38 L. Ed. 548, 14 Sup. Ct. Rep. 671; *Wood* v. *Carpenter,* 101 U. S. 135, 25 L. Ed. 807; *Foster* v. *Mansfield etc. R. Co.,* 146 U. S. 88, 36 L. Ed. 899, 13 Sup. Ct. Rep. 28.

A person claiming an interest in property must be diligent in asserting his rights. "The law helps the vigilant before those who sleep on their rights." (Rev. Codes, sec. 6195.) Where a delay appears such as in this case, the party must show an excuse therefor, or it is conclusively presumed that none exists. (*Kavanaugh* v. *Flavin,* 35 Mont. 133, 88 Pac. 764; *Bell* v. *Hudson,* 73 Cal. 285, 2 Am. St. Rep. 791, 14 Pac. 791.) Where the rights of third parties might be affected by the delay, the complainant must make a satisfactory showing or excuse for the delay. (*McNeil* v. *McNeil,* 170 Fed. 289, 95 C. C. A. 485; *Bower* v. *Stein,* 177 Fed. 673, 101 C. C. A. 299.) Failure to search the records for several years is laches. (*Redd* v. *Brun,* 157 Fed. 190, 84 C. C. A. 638.) The owner of lands, who knows that another is in possession improving the property under a deed or contract of sale, may not wait for the whole statutory period to eject the purchaser, regardless of the plaintiff's laches. (*Kessler* v. *Ensley Co.,* 123 Fed. 546.)

A party claiming an interest in a mining claim may lose the same by abandonment. "Being a question of intent it operates *instanter.*" (27 Cyc. 596 *et seq.*) "Lapse of time is persuasive evidence of its existence." (Note 21.) "The statute of limitations has nothing to do with it." (Note 22.) "Nor does it involve an estoppel." (Note 23.) "It need not be specially pleaded, but may be shown under a general denial or general allegation of title." (Note 24.) "Abandonment may arise from a single or a series of acts continued through a long space of time. It is to be determined by all the circumstances of the case." (Note 25.) "The statement of a party that he did not intend to abandon the claim is not conclusive." (Note 35.) An undivided interest may be abandoned. (*Black* v. *Elkhorn Min. Co.,* 163 U. S. 445, 41 L. Ed. 221, 16 Sup. Ct. Rep.

1101, 18 Morr. Min. Rep. 375. See, also, *Trevaskis* v. *Peard,* 111 Cal. 599, 44 Pac. 246, 18 Morr. Min. Rep. 353; *Muse* v. *Arlington Hotel Co.,* 68 Fed. 637; *Harkrader* v. *Carroll,* 76 Fed. 474, 18 Morr. Min. Rep. 474.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

On April 20, 1908, the defendant, claiming to be the exclusive owner of the Divide quartz lode mining claim, situate in the Little Rocky mining district, in Choteau county, made its application to the United States for a patent therefor through the land office at Glasgow. The plaintiffs, each claiming an undivided one-sixth interest therein as a tenant in common with the defendant, brought this action to have their rights established and determined as an adverse claim in pursuance of the requirements of the federal statute. (U. S. Rev. Stats., sec. 2326; 5 Fed. Stats. Ann. 35; U. S. Comp. Stats. 1901, p. 1430.) The pleadings were framed and the issues made up in accordance with this theory. At the trial, however, the plaintiffs omitted to introduce evidence showing that they had obtained a stay of the patent proceedings by filing their adverse claim in the land office, apparently having adopted the theory that, though the patent should issue to the defendant, it would be held trustee for the plaintiffs to the extent of their respective interests, and that the filing of the adverse claim and bringing timely action thereon was unnecessary. In any event, the trial proceeded as in an ordinary action to quiet title or to determine an adverse claim under section 6870 of the Revised Codes. The court found the issues in favor of the plaintiffs and entered a decree accordingly. Pending a motion for a new trial, Hon. Frank N. Utter, the judge *a quo,* was disqualified. He thereupon ordered that the action be transferred to the other department of the court over which Hon. John W. Tattan presides, who sustained the motion and ordered a new trial. The plaintiffs have appealed. The notice of intention assigns as grounds for the motion irregularities in the proceed-

ings, insufficiency of the evidence to justify the findings, and
[1] errors in law occurring at the trial. The order does not
indicate upon which of these grounds it was based; therefore,
under the rule heretofore observed in such cases, it must be
affirmed if it can be justified upon any one of the grounds
assigned. (*Welch* v. *Nichols,* 41 Mont. 435, 110 Pac. 89.)

The plaintiffs insist that the court abused its discretion in
granting the order, for the reason that upon the facts as dis-
closed by the evidence the right to the interests claimed by
them was clearly established, and that under the rules of law
applicable the court could not have found and decreed other-
wise than it did. Counsel for defendant insist that the motion
was properly granted on any one of four different grounds,
*viz.:* (1) That the court erred in excluding material evidence;
(2) that it was incumbent upon the plaintiffs to prosecute the
action as an adverse suit, in conformity with the provisions of
the federal statute, at the peril of losing their rights; (3) that
the evidence discloses conclusively that the plaintiffs were guilty
of laches in asserting their claims; and (4) that the interests
of plaintiffs were abandoned by them long prior to the bringing
of this action. In making this statement of the contentions of
counsel, we have for convenience deviated somewhat from the
order pursued in the brief.

The facts disclosed by the evidence are in brief the following:
The claim was located by Thomas Carter and William McKen-
zie on January 1, 1894. On October 24 in the same year each
of them, by deed duly acknowledged and recorded, conveyed
an undivided one-sixth interest to Thomas O'Hanlon, who re-
sided in Choteau county, and was engaged in merchandising
at Chinook. The conveyances were made pursuant to an agree-
ment entered into prior to the location of the claim between
O'Hanlon and Carter and McKenzie, to the effect that O'Han-
lon was to furnish the latter supplies to enable them to locate
and hold mining claims, and that they were to convey to him
a one-third interest in any claims discovered and located by
them. The claim, together with others which were located un-

der the agreement, was thereafter held by the three in common, Carter and McKenzie doing the representation work under the agreement until February 15, 1898, when Thomas O'Hanlon died intestate, leaving his two sons, Thomas J. and Henry, his only heirs. One L. V. Bogy was appointed administrator upon the estate, and continued to serve in that capacity until May 19, 1900, when he resigned. The plaintiff, Henry J. O'Hanlon, a brother of the decedent, was appointed in his stead and served until the estate was finally distributed. The two sons were minors at the time their father died, but attained their majority during the course of the administration, the former in 1899, and the latter early in 1901. Though Bogy knew of the interest of O'Hanlon in the Divide claim, he did not include it in the inventory, nor was it mentioned in the decree of distribution. On June 22, 1901, Henry O'Hanlon conveyed to Thomas J. O'Hanlon, by writing duly acknowledged and recorded, his entire interest in the estate, subject to the debts of the decedent, but without specific mention of the Divide claim. On February 1, 1902, by a similar writing, Thomas J. O'Hanlon conveyed an undivided one-half interest to Henry J. O'Hanlon. The residue of the estate was distributed to Thomas J. and Henry J., the plaintiffs herein. The claim was not mentioned in the decree. So far as the record shows, Henry O'Hanlon remained in Choteau county. Soon after the death of his father, Thomas J. O'Hanlon went to Boston, Massachusetts. He there enlisted in the United States army, and served in the Philippine Islands until his discharge in 1901, when he returned to Choteau county. On February 5, 1900, Carter and McKenzie served on Bogy a notice addressed to him as "administrator of Thomas O'Hanlon Estate," that they had done the annual representation work, amounting to $100 for the year 1899, necessary to hold the claim in conformity with section 2324, United States Revised Statutes (5 Fed. Stats. Ann. 19, U. S. Comp. Stats. 1901, p. 1426), and that, unless he should pay his proportion of this amount within ninety days from that date, his interest as co-owner would be held forfeited. Bogy

paid no attention to the notice, and did not, nor did anyone
else thereafter, pay any part of the expenses for that or any
subsequent year, though Carter and McKenzie, and the defend-
ant as their successor, had possession of the claim, and did
the work for each year until the beginning of this action.
In addition to the work of representation, Carter and McKen-
zie also did a large amount of development work during the
years prior to 1905. During the year 1904 or 1905 the de-
fendant, with a view to acquiring the claim, obtained a lease
and bond from Carter and McKenzie. It went into possession,
and did development work upon it costing, according to the esti-
mate of some of the witnesses, more than $40,000, uncovering
deposits of valuable ores, with the result that on September 6,
1906, it determined to purchase, and did purchase, the claim
at the price of $25,000 in cash. The plaintiffs were fully aware
of what was being done, and also that Carter and McKenzie, and
the defendant as their successor, were claiming to be the exclu-
sive owners under the forfeiture notice given to Bogy in 1900,
yet neither protested, or objected, or made any claim of interest,
the first assertion of their claim being made by the bringing of
this action. During June or July, 1901, Thomas J. O'Hanlon
visited Carter, who lived on or near the claim. He made inquiry
concerning the interest of his father's estate, and was then told
by Carter that the interest of the estate had been forfeited. He
was given the notice which had been served on Bogy, and, hav-
ing read it, returned it to Carter, saying, "That is all right."
He had been informed as early as the winter of 1901 that Carter
and McKenzie were claiming that the interest of his father had
been forfeited. On another occasion, prior to the purchase by
the defendant, he went to the claim, and endeavored to induce
Carter to sign notes for an account found charged against Carter
and McKenzie upon his father's books. This account was
about $800, and all but about $270 of it had apparently been
charged as the price of supplies furnished to Carter and Mc-
Kenzie while they were prospecting for the joint benefit of them-
selves and the father, and keeping up the representation work

upon the claims located by them.    Again, some time prior to the
date at which defendant paid to Carter and McKenzie the pur-
chase price for the claim, Henry J.· O'Hanlon questioned B.
D. Phillips, the president of the defendant, as to whether· it
would be possible for him to collect from or through the defend-
ant the amount of the account claimed to be due from Carter
and McKenzie.    He did not then assert an interest in the claim.
The defendant continued to develop and mine the claim, until
application was made for patent.    There is no material conflict
in the evidence.    It is true Thomas J. O'Hanlon stated that he
had no recollection of reading the notice of forfeiture on the
occasion of his visit to Carter in 1901; but he admitted that he
had learned in the winter of that year of the claim of Carter and
McKenzie that his father's interest had been forfeited, and that
during the conversation with Carter the latter had asserted that
the O'Hanlon interest had been forfeited.

1. When the defendant offered in evidence a copy of the
[2]   notice, it was rejected as immaterial.    An offer to show by
Bogy that, when he received the notice, he "notified" Thomas
J. and Henry O'Hanlon both 'that it had been served on him,
was also rejected.    The theory of the court in excluding the no-
tice was that, since it was addressed to the administrator alone,
it was wholly insufficient, because an administrator is not, by
virtue of his office, a co-owner with the cotenants of his decedent
in a mining claim, within the meaning of the federal statute,
*supra,* because the legal title to property belonging to the estate
descends, not to the administrator, but directly to the heirs, sub-
ject only to a lien in favor of the administrator for the payment
of debts.    So far as the notice, with proof of service upon Bogy,
was evidence of the forfeiture, the view of the trial court was
correct.    "The property, both real and personal, of one who dies
without disposing of it by will, passes to the heirs of the intestate,
subject to the control of the district court, and to the possession
of any administrator appointed by that court for the purposes
of administration."    (Rev. Codes, sec. 4819.)    The adminis-
trator was not, therefore, by virtue of his office a co-owner with

Carter and McKenzie; hence the service of the notice upon him could not be deemed a service upon the actual co-owners.

The federal statute provides: "Upon the failure of any one of several co-owners to contribute his proportion of the expenditures required hereby, the co-owners who have performed the labor or made the improvements may, at the expiration of the year, give such delinquent co-owner personal notice in writing or notice by publication in the newspaper published nearest the claim, for at least once a week for ninety days, and if at the expiration of ninety days after such notice in writing or by publication such delinquent should fail or refuse to contribute his proportion of the expenditure required by this section, his interest in the claim shall become the property of his co-owners who have made the required expenditures." (U. S. Rev. Stats., sec. 2324; 5 Fed. Stats. Ann. 19; U. S. Comp. Stats. 1901, p. 1420.) The purpose of the provision is to afford a speedy, convenient and effective method of taking from one cotenant his interest in the property and giving it to another without the intervention of courts or juries. (1 Lindley on Mines, sec. 646.) Therefore, when one cotenant asserts that he has devested his cotenant of his interest in the common property, the courts make examination of the circumstances under which the alleged divestiture has been brought about, and deny the claim, unless the [3] facts exist authorizing the invocation of the provision, and the personal or constructive notice prescribed has been given in strict conformity with its requirements. In *Turner* v. *Sawyer*, 150 U. S. 578, 37 L. Ed. 1189, 14 Sup. Ct. Rep. 192, the court held that the statute is one of forfeiture, and as such must be strictly construed; hence a notice given by one who was not at the time actually a co-owner, but vested only with an equity under a sheriff's certificate of sale, was not effective to work a forfeiture, though he had done the full amount of work necessary to preserve the claim. So, where the delinquency was not shown by the facts presented by the evidence (*Brundy* v. *Mayfield,* 15 Mont. 201, 38 Pac. 1067), or the required work for the particular year was excused by Act of Congress (*Royston* v.

*Miller* (C. C.), 76 Fed. 50), or the delinquent co-owner to whom the published notice was addressed was dead (*Billings* v. *Aspen M. & S. Co.*, 51 Fed. 338, 2 C. C. A. 252), it was held that the attempt to work a forfeiture was ineffective. In *Elder, Admr., v. Horseshoe Mining etc. Co.*, 9 S. D. 636, 62 Am. St. Rep. 895, 70 N. W. 1060, the published notice was addressed "to Rufus Wilsey, his heirs, administrators, and to all whom it may concern." Wilsey, the delinquent co-owner, was dead. There was no administrator, the one originally appointed having died. The court held that, since the address included all persons who could have had an interest in the property in controversy, it was sufficient. In the same case, on error to the supreme court of the United States (194 U. S. 248, 48 L. Ed. 960, 24 Sup. Ct. Rep. 643), in affirming the judgment, Mr. Justice Peckham said: "This statute provides a summary method for the purpose of insuring the proper contribution of co-owners among themselves in the working of the mine, and it provides a means by which a delinquent co-owner may be compelled to contribute his share under the penalty of losing his right and title in the property because of such failure. It was not necessary, in our judgment, that the notice should specifically name the heirs of the deceased owner. The Act does not require it. If the notice be such that the former owner is particularly named and identified thereby, and his heirs are notified by the publication, it is a sufficient notice to them for the purpose of making it necessary for them to comply with the terms of the statute within the time designated therein, by the payment of their share of the expenses of working the mine, or else to lose their right, title, and interest therein. * * * A general address to the heirs of the person named and the proper publication of the notice is sufficient. It did not become insufficient because, in addition to being addressed to them, it was also addressed to their intestate by name. An address to a deceased person did them no harm, so long as it was also addressed to them." It may be noted that both courts, while stating that the statute does not require the notice to be addressed to anyone, imply by the language used that it should

be so addressed as to include all persons interested as co-owners. It may be noted, also, that, while neither definitely decides the question whether notice to the administrator is sufficient, both impliedly hold that it is not.

The notice under consideration was addressed to Bogy alone as the co-owner. If, under the rule as stated in *Turner* v. *Sawyer, supra,* the notice must be given by a co-owner, by the same rule it must, in order to be effective, be served upon the real co-owner, whether the service be personal or constructive. As we have seen, Bogy had no interest, and hence the notice to him could not be effective, for, if the word "co-owner" is used in a restrictive sense when applied to the co-owner giving the notice, it must be used in the same sense when applied to the delinquent co-owner.

But counsel insist, that if they had been permitted to do so, [4] they would have shown that the notice served on Bogy was called to the attention of both the sons, and hence that it became as effective as if it had been addressed to them and personally served upon them. In support of this position, they cite *Evalina Gold Min. Co.* v. *Yosemite Gold M. & M. Co.,* 15 Cal. App. 714, 115 Pac. 946. In that case the facts were these: The Slap Jack mine was owned by six persons as tenants in common. Two of them failed to do any portion of the representation work for the year 1898. In December of the following year the four other cotenants, having done the work, gave personal notice to the delinquent in writing, demanding contribution in pursuance of the provisions of the statute. The latter, having at that time conveyed away their interests, immediately delivered the notice to their grantee under a prior unrecorded deed. The court held that, since the latter actually received the notice, though it was not addressed to it by name, and also had knowledge that the work had been done by the cotenants of its grantors, the notice was sufficient to forfeit its right, because the grantee, the real owner, had had full opportunity to protect itself from forfeiture. The case is distinguished in its facts widely from the present case. Here the cotenants, seeking to work the forfeiture, knew

that Bogy was not their cotenant; they knew that O'Hanlon had heirs who upon his death had succeeded to his estate, and that they would continue to hold as owners unless their title should be devested by sale during the administration. Since they had been associated with O'Hanlon in their prospecting enterprise, it is fair to presume that they knew of the two sons and that they were the only heirs. But, whether they did or not, they could have given notice by publication without making any inquiry. Besides, the offer to show by Bogy that he notified the sons that he had received the notice falls far short of showing that the notice actually came into their hands, or that the facts which the statute requires to be brought to the knowledge of the delinquent were thus communicated to them. Neither the notice nor the fact that Bogy conveyed to the sons the information merely that he had received it was, we think, material on the question of forfeiture. Nor, if it be assumed that Thomas J. O'Hanlon read the notice in 1901, was this sufficient to devest him of his title, for the time during which he might have complied with the demand it made for payment had long since expired. Even if the ruling of the California court should be accepted without question as sound, it ought not to be held applicable to a state of facts entirely different from that presented in the case before the court.

We think, however, that the evidence was competent and material as reflecting upon the subsequent conduct of plaintiffs, and, together with the other facts shown, as furnishing a basis for an inference of inexcusable delay in asserting their claim. The plaintiff Thomas J. O'Hanlon and his brother would thus have been shown to have known of the claim of Carter and McKenzie as early as February 5, 1900. So the plaintiff Henry J. O'Hanlon, having become the administrator on May 19, 1900, must likewise have known of it soon after, for his official duty required him to know, and the presumption must be indulged that he did know. Both knew of the development work that was being done by Carter and McKenzie and the defendant, and that they were claiming exclusive ownership. The evidence should

have been admitted and considered upon the question whether the plaintiffs should be charged with laches. The trial court found that they were not open to this charge. What conclusion it should have reached if the excluded evidence had been admitted and considered, we are not now required to decide, as that is a question to be determined in the first instance by the court below upon consideration of all the material evidence. The error committed in excluding this evidence was sufficiently substantial to entitle the defendant to a new trial as a matter of right.

The evidence was also competent and material upon the question of abandonment. As the term "abandonment" is defined [5] in the books in this connection, it means a leaving of the claim by the owner with the intention, expressed or implied, of never returning to it, or, in other words, leaving it open and free to location by anyone who chooses to take it. (*McKay* v. *McDougall,* 25 Mont. 258, 87 Am. St. Rep. 395, 64 Pac. 669;. *Badger G. M. & M. Co.* v. *Stockton G. & C. M. Co.* (C. C.), 139 Fed. 838.) In this sense one cotenant cannot abandon a claim, because he cannot by any course of conduct destroy the interest of his cotenant so that the claim reverts to the United States; nor can his conduct inure to the benefit of the other cotenant. But, when his conduct is such that, if he were the sole owner, he would be held to have abandoned his right in a technical sense, may he thereafter assert title to the interest so renounced? To illustrate: A and B are tenants in common. Because A concludes that the claim is valueless, he leaves it, expressing the intention never to return. Without reference to what the subsequent events may have been, when his conduct has been made to appear, ought the court to say that, because the claim has been kept alive by B, and perhaps has been shown to be valuable, A's interest still remains as a valid, subsisting right? We do not think so. Having renounced his right, it is of no concern to him what thereafter becomes of the claim. He is not concerned with the question whether his abandonment inures to the benefit of B, or whether B asserts title to the whole; nor is

he concerned about whether the federal authorities will issue a patent conveying full title to B. So far as the court is concerned, he is entitled to no relief, because he shows no right. So far as his interest is concerned, it stands as if the claim had never been located. Under these or other circumstances justifying an inference that he has abandoned his interest, ought the court to treat his claim with any indulgence? On the contrary, he should be left under the disability he has brought upon himself, and be adjudged to have no standing in court to assert an interest or to question the interest of his cotenant or any other person whomsoever. On another trial the evidence should be considered as the basis for such inference as the court thinks it ought to draw from it in this behalf.

2. Counsel for defendant made no objection in the court below to the course pursued by the plaintiffs in the trial of the case. [6] They are therefore not now in position to insist that the court erred in treating the action at plaintiffs' instance as an ordinary one to quiet title, instead of an adverse suit under the federal statute. While it is true that the excluded cotenant may bring his adverse suit and have his rights determined, so [7] that the patent will convey directly to him whatever interest he shows himself entitled to (*Mattingly* v. *Lewisohn*, 8 Mont. 259, 19 Pac. 310; *Badger etc. Co.* v. *Stockton etc. Co.* (C. C.), *supra; Brundy* v. *Mayfield*, 15 Mont. 201, 38 Pac. 1067; *Turner* v. *Sawyer*, 150 U. S. 578, 37 L. Ed. 1189, 14 Sup. Ct. Rep. 192; 1 Lindley on Mines, secs. 646, 728), yet he is not bound to do so. He may ordinarily, if he chooses, wait until the conclusion of the patent proceedings, and then assert his equities in the patent title, and have the patentee declared a trustee for his benefit to the extent of his interest. (*Brundy* v. *Mayfield; Turner* v. *Sawyer, supra.*) This he may do by virtue of the well-settled rule that "cotenants stand in a certain relation toward each other of mutual trust and confidence; that neither will be permitted to act in hostility toward the other; and that a distinct title acquired by one will inure to the benefit of all." (*Turner* v. *Sawyer, supra.*) If this course is permissible, then, for the same

reason, the excluded cotenant may bring his action in the ordinary way, without reference to the patent proceedings, and proceed to judgment which will be effective to establish his right. The pendency of the patent proceedings could not be alleged to oust the state court of jurisdiction, for, if it is not too late to bring the action after the patent has issued, it certainly cannot be a fatal objection to it if brought pending the patent proceedings. We know of no rule by which, under the conditions presented in this case, so far as the objection urged by counsel avails, the plaintiffs are to be held bound by their election to bring the action as they did, or that precluded the trial court from treating the allegations touching the patent proceedings as surplusage, and proceeding with the case as an ordinary action to quiet title. Cases may arise in which the ousted cotenant must proceed under the federal statute; but the statute was intended to apply only to those cases in which there are adverse claims arising out of conflicting locations, or where the adverse claimants derive title from different sources. In any event, the facts of this case bring it clearly within the rule as announced in *Turner* v. *Sawyer* and *Brundy* v. *Mayfield, supra,* which hold directly in point against the contention of counsel. We know of no case which supports the text of Mr. Lindley, who expresses the opinion that, where one cotenant has wrongfully excluded another under circumstances which in law create an adverse holding, and set the statute of limitations in motion, the ousted cotenant must assert his right in the patent proceedings. (Lindley on Mines, sec. 728.) We do not regard the case of *Tabor* v. *Sullivan,* 12 Colo. 136, 20 Pac. 437, cited by counsel, as even persuasive in support of their contention. The parties in that case claimed under different deeds from the same source, executed prior to the issuance of patent. The question at issue was whether the grantor of plaintiff, who held under the one of the deeds which had first been recorded, had acquired his title as an innocent purchaser, and hence had conveyed a perfect title to the plaintiff. The court held that he had. Justice Elliott, in concurring, expressed the opinion that, since the claims of the

parties were "always conflicting, always adverse, never friendly, never confidential," the parties never became tenants in common, and hence that the defendants had lost any rights they had acquired under their deed by suffering patent to issue without asserting them by adverse proceedings under the federal statute.

3. The discussion in the foregoing paragraphs covers such consideration of the other two contentions made by counsel as may properly be devoted to them on this appeal.

Another question presented by the record, but not discussed by counsel, requires a brief notice. It is alleged in the complaint [8] and shown by the evidence that, when the action was brought, the defendant was in possession of the disputed ground, claiming to be the owner, and excluding the plaintiffs therefrom. The trial proceeded as if the action had been brought under section 6870 of the Revised Codes, instead of under section 6882 in pursuance of the provisions of the federal statute. Under the latter section it is immaterial which party is in possession of the disputed ground, it being sufficient to confer jurisdiction upon the court for all purposes, "if it appears from the pleadings that the application for patent has been made and an adverse claim thereto filed and allowed in the proper land office." The former section (Code Civ. Proc. 1895, sec. 1310) was examined in the original opinion in *Montana Ore Purchasing Co.* v. *Boston & Mont. Con. C. & S. Min. Co.*, 27 Mont. 288, 70 Pac. 1114, and also in the opinion delivered on rehearing in the same case, 27 Mont. 536, 71 Pac. 1005. It was distinctly held in that case that the purpose of the section was to confer upon courts of equity the power to entertain actions to quiet title in cases in which they therefore did not lie, viz., in cases in which the plaintiff is in possession and an adverse claim is asserted by the defendant, and in cases in which neither plaintiff nor defendant is in possession and the defendant is asserting an adverse claim. It was also pointed out that the plaintiff out of possession must, as against the defendant in possession asserting an adverse claim, resort to an action in ejectment, because under such circumstances he has an adequate remedy at law, and may

not resort to a court of equity. Under this interpretation of the section, the complaint in this case does not state a cause of action, and upon the evidence adduced the defendant was entitled to judgment. If upon another trial the plaintiffs furnish proof of the filing of the adverse claim, this infirmity in their case will be cured; otherwise they cannot maintain the action at all.

The order is affirmed.

*Affirmed.*

MR. JUSTICE HOLLOWAY and MR. JUSTICE SANNER concur.

(Submitted September 18, 1913.  Decided. October 11, 1913.)