# MONTANA ORE PURCHASING COMPANY, Respond-
## ent, *v.* BOSTON & MONTANA CONSOLIDATED
## COPPER & SILVER MINING COM-
## PANY, Appellant.

(No. 1,629.)

(Submitted March 6, 1903.   Decided April 2, 1903.)

*Lode Mining Property—Deeds—Extralateral Rights—Action to Quiet Title—Constitution—Jury Trial—Appeal—Deeds —Construction—Finding of Trial Court—Conclusiveness.*

1.   Where plaintiff—in or out of possession of real property—brings an action under Code of Civil Procedure, Section 1310, against a defendant not in possession, such action is cognizable in a court of equity only and neither party is entitled to a trial by jury as a matter of right, unless defendant, where plaintiff is in possession, raises by appropriate allegations a purely legal issue upon the right to the possession, founded on an assertion of a legal title.

2.   Where plaintiff has title to and possession of the surface of a lode mining claim containing the apex of a vein with extralateral rights extending under the surface of a lode mining claim owned by and in possession of defendant, plaintiff,—under Revised Statutes, U. S., Section 2322, must be deemed to be in possession of all parts of said vein to which he has title, notwithstanding the presumption in favor of defendant's title to and right to the possession of everything beneath his surface.

3.   The conclusion reached by the trial court as to the effect of a deed is not binding on the court on appeal, where the facts surrounding its execution are not controverted.

4.   *Held,* that, in view of the surrounding circumstances, the grantors in a certain deed to a portion of a lode mining claim, which conveyed portion embraced parts of apices of veins with extralateral rights, intended to convey to the grantees conventional apices of said veins with all the rights thereon extralaterally which the grantors had.

On Rehearing.

Former opinion (27 Montana, 288, 70 Pac. 1114) modified.

The following is a diagram of the property in question:

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

At the rehearing granted herein two of the questions considered and determined in the original opinion were reargued at length, namely, whether the defendant was entitled to a trial by jury as a matter of right, and whether the district court was in error in fixing the vertical plane, as it did, to limit toward the west the rights of the plaintiff upon the exterior portions of the veins in controversy. The rehearing upon the first question was granted upon the motion of the defendant, because of its importance not only in this case, but in all other similar cases. Counsel for plaintiff questioned the correctness of the conclusion of the court upon which the judgment of the district court was modified, and a rehearing was granted upon that point in order that they might be allowed an opportunity to call attention to matters in the record, the importance of which, it is insisted, this court had failed to notice in the consideration of the case.

1.   We have given the matter of the right of trial by jury further consideration, by a review of the authorities cited upon the hearing, and have also examined the additional ones cited in the briefs submitted at the rehearing.   While the solution of the question involves much difficulty, no suggestion has been made which inclines us to recede from the views expressed in the original opinion.   After citing and commenting upon cases decided by the territorial supreme court, we said in that opinion:   "But for these cases, we should hold that the right of trial by jury extends to all cases wherein the legal title or right of possession is at issue."   Seizing upon the doubt implied by this language, the defendant plausibly argued that, in the class of cases to which this belongs, the right of trial by jury was guarantied under the seventh amendment of the Constitution of the United States, and under the Act of Congress of April 7, 1874, making the provisions of this amendment expressly applicable to territorial governments, and that these cases were erroneously decided.   It has always been the rule in this jurisdiction, both under the territorial and state governments, that where the right of possession to real estate is at issue, whether the action be based upon a claim of legal title, or upon a mere possessory right, either party is entitled to a trial by jury. Such an action is strictly one at law.   Even in an action brought to quiet title under the statute by the party in possession, whenever the defendant seeks by appropriate allegations to have his title determined and the possession awarded him, either party is entitled to have the legal issue thus raised submitted to a jury.   This view is sustained by the authorities cited and relied upon by counsel.   Indeed, it seems that the only appropriate action to determine an adverse claim to property in possession of the defendant in the action asserting title thereto is eject-ment.   Incidentally the equitable powers of the court may be invoked to aid the action at law by removing some obstruction to the legal title, or by preserving the property pending the ascertainment of the title, but the principal relief can be granted only after a trial of the legal issues according to the course at common law.   Neither the old form of the statute (Compiled

Statutes, 1887, General Laws, First Division, Section 366), nor the amended form of it (Code of Civil Procedure, 1895, Section 1310), contains any intimation as to the form of action which may be brought in any case. The purpose of the act was to authorize equitable actions where none would lie before. Where a party was in possession, though with full knowledge that there was an outstanding adverse claim, he was helpless, so far as concerned the existence of any remedy to have the title determined, if he were not harassed by suits by the adverse claimants. He was compelled to wait until disturbed by such actions, and could then proceed as the actor only after he had successfully resisted one or more of them. Where neither party was in possession, neither could proceed, as against the other, in order to have his adverse claims determined. Under these circumstances, the holder of the legal title—the owner of the fee—was compelled to rest with a questionable title until his possession was disturbed, and to incur the risk of losing the evidence of facts necessary to establish it. In neither case was there any form of action by which he could compel a discovery by his adversary, and have the adverse claim determined. Recognizing the necessities of the case, the legislature authorized the persons so situated to institute the appropriate action, whatever that might be. The old statute authorized only parties in possession to institute a suit. The amended form of it authorizes suit whether the claimant to the legal title be in possession or not. As against the party in possession, the adverse claimant needed no legislation, because the action authorized by other statutes in the nature of ejectment to recover possession furnished an adequate and complete remedy. (*United States* v. *Wilson,* 118 U. S. 86, 6 Sup. Ct. 991, 30 L. Ed. 110; *Frost* v. *Spitley,* 121 U. S. 552, 7 Sup. Ct. 1129, 30 L. Ed. 1010.) But a plaintiff (in or out of possession) as against a defendant not in possession, must, under the statute, resort to a court of equity, because, though the right to proceed is granted, no specific remedy is provided. Hence the theory of Mr. Pomeroy, that the action authorized by the statute is in its nature cognizable in a court of equity only. (Pomeroy, Eq. Jurisprudence,

Sec. 138.)    This is the view taken by Chief Justice Field in
*Curtis* v. *Sutter,* 15 Cal. 260, and also in *Holland* v. *Challen,*
110 U. S. 15, 3 Sup. Ct. 495, 28 L. Ed. 52.    In the latter case,
speaking of the situation of the parties and the necessities of
the case, he says:    "No adequate relief to the owners of real
property against the adverse claims of parties not in possession
can be given by a court of law.    If the holders of such claims
do not seek to enforce them, the party in possession or entitled
to the possession—the actual owner of the fee—is helpless in
the matter, unless he can resort to a court of equity."    This was
said with reference to the jurisdiction of the United States cir-
cuit court, when sitting in equity, to entertain an action under
the statute of Nebraska by the owner, when not in actual pos-
session, against an adverse claimant also not in possession; and
the conclusion was therein reached that, from the necessities
of the case, the action is equitable in its nature, and must be
tried in a court of equity.    This conclusion is in full accord
with the earlier view expressed in *Curtis* v. *Sutter, supra.*    Nor
is it inconsistent with the suggestion contained in the latter
case, that, when purely legal issues arise, resort may be had to
the ordinary legal procedure to determine them.    If the
plaintiff is in possession, and the defendant raise a purely legal
issue upon the right to the possession, founded on an assertion
of legal title, this issue is triable by a jury as a matter of right.
Upon this view of the purpose of the statute, the cases of *Dona-
hue* v. *Meister,* 88 Cal. 121, 25 Pac. 1096, 22 Am. St. Rep.
283, and *Newman* v. *Duane,* 89 Cal. 597, 27 Pac. 66, are en-
tirely consistent with the cases of *Curtis* v. *Sutter* and *Holland*
v. *Challen, supra,* and the other cases arising under similar
statutes cited in the original opinion.    Nor are any of them
inconsistent with the cases decided by our territorial supreme
court.    Indeed, after further consideration of these cases, we
are of the opinion that they are correct in principle, and that
the doubt implied in the language quoted from the original
opinion is not well founded.    They are in no way in conflict
with the seventh amendment of the Constitution of the United
States, as counsel contend.    It must not be overlooked that the

right of trial by jury guarantied thereby is the right as it existed at the common law; that is, in that class of cases in which there was no impediment in the way of complete and adequate redress by proceeding according to the course of the common law. The right of trial by jury under the territorial government was exactly the same as that guarantied by this amendment—no greater, no less. Where such impediment existed, and adequate redress could not be had in an action at law, even when legal issues were involved, the action was cognizable in equity, and not at law. (*Whitehead* v. *Shattuck*, 138 U. S. 146, 11 Sup. Ct. 276, 34 L. Ed. 873; *Holland* v. *Challen*, 110 U. S. 15, 3 Sup. Ct. 495, 28 L. Ed. 52.) And though, under the old practice, courts of equity had no jurisdiction to entertain suits to quiet title, except upon certain conditions—as where, for illustration, the plaintiff in possession had first successfully maintained one or more actions at law against the adverse claimant—it was and is within the power of the legislature to dispense with such conditions without impairing the general authority of the court. (*Holland* v. *Challen, supra;* Pomeroy, Eq. Jurisprudence, Secs. 1396-1398.) This result has been wrought by the statute, so far as concerns the class of cases to which the present belongs.

But counsel for defendant insist that the facts in the record show that the plaintiff was not in possession at the commencement of the action, or, in any event, that such possession as it had was wrongful; that the real purpose of this action is to determine the right of possession; and that therefore a jury trial should have been awarded, because, where possession is obtained by wrongful or fraudulent entry, as they say was the case here, a court of equity will not entertain jurisdiction under the statute. They cite *Gage* v. *Hampton*, 127 Ill. 87, 20 N. E. 12, 2 L. R. A. 512; *Hardin* v. *Jones*, 86 Ill. 313; *Comstock* v. *Henneberry*, 66 Ill. 212; and *Dyer* v. *Baumeister*, 87 Mo. 135. We do not controvert the principle underlying these cases, but it has no application to this case. It is true that the defendant was and is in possession of the surface of the Pennsylvania claim. From this fact the presumption arose that it had title

to and possession of everything beneath the surface.   The doctrine, *"Cujus est solum, ejus est ad inferos,"* applies, but not in the same sense as it does to other species of real estate.   At common law this presumption was conclusive where there was no reservation in the grant, or where it did not operate by reason of some local custom.   Under the mining laws of the United States, however, it is not conclusive, except as against one who cannot show that he enters beneath the surface in pursuit of a vein of which he owns the apex or portion thereof so intercepted by the end lines of his claim that he is entitled to follow it. When this appears, the presumption arising from the *cujus solum* doctrine is overturned, and gives way to the presumption based upon the provisions of Section 2322 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 1425), which clothes the owner of the surface and the apex with the exclusive right to the possession and enjoyment both of such surface and the vein, including the right to follow it to its utmost depth.   So, also, the owner in possession of the surface and apex of the vein must be deemed to be in possession of all parts of the vein to which he has title, though it departs beyond his side lines, just as he is in possession of that portion of the earth vertically beneath his surface.   Therefore, when he has followed it beneath the surface of his neighbor, he has committed no wrong, and is not a trespasser.   On the contrary, the objecting neighbor is setting up a claim for which there is no foundation, and to foreclose which the provision of the statute may be invoked.   It would be intolerable, were the owner of the apex of a vein which departs beneath his neighbor's surface compelled to resort to an action at law in every case in which the owner of such surface has trespassed upon a portion of the vein, basing his right to so enter thereon upon his surface ownership, merely.   This view would involve a trial of the issue of ownership upon every assertion of title by the owner of the surface, and the actual owner of the vein would be compelled to establish his right to every foot of it on its descent into the earth.

2.   In their brief accompanying the motion for a rehearing,

counsel for the plaintiff criticise the following portion of the former opinion: "In our opinion, the decree should be modified so as to fix the west end planes in the direction of the lines L, M, and F, N, at the points where the different veins pass through the line E, F; the plaintiff conceding that this is proper if, upon a construction of the deeds, this court concludes that the trial court erred in fixing the west end plane in the direction of the line E, F." They say that the court therein erroneously made them concede something which they in fact did not. Upon a re-examination of the briefs, we find no specific statement to justify the use of the language employed by this court. The court was perhaps misled by some suggestion made during the oral argument. We are therefore pleased to make the correction suggested by the criticism. The absence of the concession, however, does not relieve the difficulty of solving the question as to the correct position of the west boundary line limiting the extralateral rights of the plaintiff beneath the surface of the Pennsylvania claim. The plaintiff insists that this court is bound by the judgment of the district court in this connection, because, if the court did not expressly find the facts warranting the construction given the deed to the conveyed portion, yet, under the doctrine of implied findings which prevails in this state (*Yellowstone Nat'l Bank* v. *Gagnon*, 25 Mont. 268, 64 Pac. 664), it must be presumed that the district court found the facts; and in the absence of an effective attack upon the findings, either express or implied, we cannot review the conclusion of the court thereon. In this we do not agree with counsel. We shall not discuss the questions of practice presented in this connection, but pass them with the remark that there are in the record of the evidence no facts warranting a finding upon which the court could construe the deed as it did. The effect to be given to this deed presents a question of law. The court could look to the facts surrounding its execution to aid it in arriving at a just and correct conclusion, but the conclusion so reached is not necessarily binding upon this court—especially so since the facts surrounding the execution of the deed are not controverted.

The facts apparent from the record to which counsel say we failed to give due weight in our consideration of the case are the following: That the Rarus claim was located October 2, 1878, entered for patent September 2, 1883, and patented June 25, 1884; that the Johnstown claim was located January 24, 1879, entered for patent September 1, 1883, and patented November 15, 1884; that on March 7, 1883, the owners of the Johnstown gave the deed to the conveyed portion; that at the same time the same persons who are also the the owners of the Pennsylvania claim gave a deed to the small triangle in conflict between the Rarus and Pennsylvania claims; that the discovery shaft of the Johnstown was within the limits of the Rarus claim; and that at the time the deed was executed the owners of both these claims knew that the discovery vein of the Johnstown dipped to the south. It follows, they say, that the location of the Johnstown was void, and therefore that, as the patent to the Rarus excluded all the area in conflict between that claim and the Johnstown as located, the inference is conclusive that there was a compromise between the parties by which the owners of the Rarus were to have extralateral rights upon the Johnstown vein, bounded by the vertical plane of the line F, E (see diagram), extended in its own direction. This theory is plausible, but cannot, we think, be sustained. The Johnstown claim was patented as the Johnstown claim. Such rights as appertain to it extralaterally came through that patent. The extralateral rights conveyed by its owners were such as were obtained through their patent. While it was competent for them to convey all rights so obtained, they cannot be held to have conveyed any more of them than were expressly granted under the terms of their deed, or such as, looking to the nature of the property they were dealing with, and the surrounding circumstances, must, by necessary implication, have also been included. All of these facts, save those showing knowledge in the parties as to the direction of the dip of the vein, were fully considered in arriving at the construction given the deeds to the conveyed portion; and though we have taken them in connection with the fact of the knowledge of the dip, which latter was not called to our atten-

tion at the first hearing, we do not think there is any foundation in the record to support the claim of plaintiff that under the deed of March 7, 1883, the grantors intended to convey the vein extralaterally in the direction of the line E, F, extended, as the district court held. This solution of the question presented would rest upon a speculative conclusion as to what the purpose of the parties was in the transaction connected with the patent proceedings. The knowledge of the parties of the direction of the dip of the vein, however, taken in connection with the transactions surrounding the application for patent, supports the theory that the grantors by that deed intended to convey to plaintiff all of the vein extralaterally east of a vertical plane in the direction of the line E, Q. The deed clearly included all of the parts of the veins embraced within the boundaries of the conveyed portion. When the original opinion was prepared, we proceeded upon the presumption that the record contained no facts tending to show that the parties knew the direction of the dip of the veins, and hence, there being manifested by the terms of the deed and attendant circumstances an intention to convey extralateral rights, that the extent of these should not be left to depend upon the mere accident of the direction of the dip. We therefore adopted the theory that the most equitable solution of the matter was to fix the boundaries extralaterally by vertical planes passing in the direction of the lines F, N, and L, M. It appears, however, that, at the time surveys were made for patent for the Johnstown and Rarus claims, some development work had been done upon the discovery vein, and that it was shown to have a dip to the south. This fact, taken in connection with the other circumstances stated, we think, justifies the conclusion that the line F, E, was fixed by the parties as the utmost limit to which the rights of the grantees should extend along the strike of the veins conveyed, and that they should have all the rights thereon extralaterally which the grantors had. The portion of the veins cut off by the vertical plane along the line F, E, thereby became a conventional apex for the portion of the veins between the point E and the points at which they respectively cross the line F, E. In view of the

surrounding circumstances, this seems to be the most equitable solution of the very difficult question presented. The theory of the plaintiff, besides requiring speculative reasons to support it, would also lead to the result that its grantors, in order to avoid complications in the proceedings instituted to secure the patent to the Johnstown claim, actually granted away substantially all their extralateral rights, because it is apparent that if the vertical plane of the line F, E, extended, should be taken as the boundary between the parties as to their extralateral rights, the defendant would have nothing left except the portions of the veins intercepted by that plane and one passing downward through the west end line of the Johnstown claim. While we think the conclusion reached in the original opinion is correct upon the facts that were then presented, the judgment should be modified to meet the inferences deducible from the facts as they actually exist.

The order denying a new trial is therefore affirmed. The cause is remanded, with directions that the district court modify the decree by disallowing the items of costs complained of, and by limiting the extralateral rights of the plaintiff by vertical planes in the direction of the line F, E, to the point E, and thence in the direction of the line E, Q, extended. When so modified, the decree will be affirmed.

*Modified and affirmed.*