No. 83-374

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

IN THE MATTER OF
C.L.A. and J.A., Youth in Need of Care.

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Robert H. Wilson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Patten and Renz; Jeffrey T. Renz argued, Billings,
Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Robert Smith argued for fundamental issues of right
to a jury trial, Asst. Atty. General, Helena, Montana
Harold F. Hanser, County Attorney, Billings, Montana
Greg Mullowney argued, Deputy County Attorney, Billings
Olsen, Christensen, Gannett & Waller; Damon Gannett
argued as guardian ad litem, Billings, Montana

Submitted: February 29, 1984

Decided: August 2, 1984

Filed: AUG 2 1984

*Ethel M. Harrison*
_____
Clerk

The Honorable Thomas M. McKittrick, District Judge, delivered the Opinion of the Court.

Natural parents, Richard and Judy Allmer, appeal from an order of the Yellowstone County District Court finding their minor children, five-year-old C.L.A. and three-year-old J.A., "youths in need of care," and terminating the parents' rights in the children. On July 15, 1981, the Department of Social and Rehabilitation Services took possession of the children pursuant to a trial court order for temporary investigative authority, authorized under section 41-3-402, MCA. On April 15, 1982, the State petitioned the trial court for permanent custody and authority to assent to adopt. The petition alleged basically that the parents were unable and unwilling to properly care for the children.

The parents timely filed a jury demand with the trial court. The trial court denied the demand, citing section 41-3-607(4), MCA. The cause was tried before the court sitting without a jury on November 23, 1982. The trial court consolidated the adjudicatory and disposition hearings under section 41-3-607(1), MCA, found both youths to be "in need of care," found that the parents had not complied with the approved treatment plan, found them to be beyond rehabilitation, and terminated their parental rights. Parents appeal from these findings and conclusions. We affirm.

The parents present three issues for review. First, whether the parents were entitled to have a jury determine whether their children, C.L.A. and J.A., are abused, dependent, or neglected. Second, whether the findings and conclusions of the trial court are supported by substantial

evidence. Third, whether the trial court abused its discretion when it refused to allow the parents to cross-examine the State's witnesses regarding the ultimate placement of the children.

C.L.A. and J.A. are the fifth and sixth children born to the Allmers, and Judy Allmer was pregnant at the time of the hearing. All four older siblings have been taken from the Allmers by order of the court.

The facts of the case are derived for the most part from the testimony of the psychologist, social workers, and special education teacher, all of whom were retained by the State and had substantial contact with the Allmer family. Their testimony will be set forth in detail in discussing the second issue.

The first issue, whether the parents had a right to a jury trial, is strictly a question of law. The trial court denied the parent's demand for a jury trial, relying on section 41-3-607(4), MCA. That section provides that "there is no right to a jury trial at proceedings held to consider the termination of a parent-child legal relationship." The parents argue that section is unconstitutional pursuant to Art. II, § 26 of the Montana Constitution, which provides that "the right to a trial by jury is secured to all and shall remain inviolable." That provision was adopted as part of the original 1889 Constitution and was recodified in the 1972 Constitution. The question is whether that right extends to civil parent-child termination proceedings which are controlled by sections 41-3-401, et seq., MCA.

The rule in Montana is that our state constitution only guarantees the right to a jury trial in the class of cases in which the right was enjoyed when the constitution was

adopted. Montana Ore Purchasing Co. v. Montana Consolidated Copper and Silver Mining Co. (1902), 27 Mont. 288, 306, 70 P. 1114; State ex rel. Jackson v. Kennie (1900), 24 Mont. 45, 56-57, 60 P.2d 589. But in the class of cases where the right is preserved, it "shall remain inviolable" and cannot be revoked by legislative act. Chessman v. Hale (1905), 31 Mont. 577, 79 P. 254.

When our Constitution was first adopted in 1889, there was no right to a jury trial in civil proceedings for termination of the parent-child relationship because there existed no such proceeding. There were only criminal sanctions which could be imposed on abusive or neglectful parents. Ch. I, § 11, 1888 Compiled Statutes of Montana. The parents argue that the present civil proceedings "evolved" from that criminal statute, and therefore derived the "inviolable" right to a jury trial from a right that existed in 1888, before the Constitution was adopted. We disagree. The more likely predecessor of the present day civil proceedings (sections 41-3-401, et seq., MCA) was Section 290, Civil Codes of 1895. That section provided for a civil action by the child or county against the parent for any "abuse of parental authority," and if abuse was established, the child could be "freed from the dominion of the parent . . ."

The resulting statutory scheme is that there existed criminal sanctions against the parents in 1888, with a right to a jury trial; our first constitution was adopted in 1889 preserving all existing rights to trial by jury; the 1895 statute creating a civil cause of action by the child or county against the parents, with no express provision regarding a jury trial; and our present day statutes that

- 4 -

provide for a civil action to terminate the parent-child relationship, provide expressly that the civil action shall "not foreclose criminal proceedings," and provide there shall be no right to a jury trial. Therefore, because there was no right to a jury trial for civil proceedings to terminate parental rights when our Constitution was adopted in 1889 and recodified in 1972, such a right could not be brought within the protective arms of Art. II, § 26.

There is a second question regarding the jury trial issue. That is whether section 41-3-607(4), MCA, specifically the language ". . . at proceedings held to consider the termination . . ." of parental rights, refers not to the adjudicatory hearing (section 41-3-404) where it is determined whether the child or children are "in need of care," but only to the dispositional hearing (section 41-3-406) where the parental rights may actually be terminated, if the children have been adjudged "in need of care."

There are three reasons why this construction of section 41-3-607 seems too restrictive. First, the "plain language" of the adjudicatory hearing statute, section 41-3-404, expressly provides that ". . . the court shall determine whether the youth is in need of care . . ." Second, section 41-3-607(1) provides the trial court with the option of consolidating the adjudicatory and dispositional hearings, making it unlikely that the legislature intended to allow a jury trial at one stage of the proceedings and not at the other. The trial court did in fact consolidate the two hearings in this case. Third, the "plain language" of the jury trial statute, section 41-3-607, refers specifically to more than one proceeding, also making it unlikely that the

- 5 -

legislature intended to provide for a jury trial at the adjudicatory hearing, but not at the dispositional hearing.

The second issue is whether the findings and conclusions of the trial court are supported by substantial evidence. As a matter of background, the State implemented a rehabilitation plan for the parents. Under the plan, the parents were being encouraged and instructed on increasing their interaction with the children, as well as personal hygiene, proper diet and clothing for the children, general housekeeping and meal preparation, and other basic needs the children were not receiving. At the adjudicatory and dispositional hearings, the trial court found both youths, C.L.A. and J.A., to be "in need of care," found that the parents had not complied with the approved treatment plan, found the parents to be beyond rehabilitation, and terminated their parental rights. The findings are presumed correct and will not be reversed absent a clear abuse of discretion. In Re Gore (1977) 174 Mont. 321, 570 P.2d 1110.

The evidence as a whole paints a dismal picture for the parents, and consequently, for the children. Both parents are very poorly educated and neither is capable of holding a steady job. At the time of trial, they were living in a trailer at the county landfill in Colstrip, where they earned a living by "picking beer cans" and turning them in for small cash. The trailer had no running water or toilet facilities.

The State presented seven witnesses at trial. Dr. Richard Agosto, a clinical psychologist who examined both the parents and the children, in and out of the home, testified as to the psychological findings he made. He found the father to have an I.Q. of 71, the mother 80. The father was found to be totally non-receptive to constructive input, and

- 6 -

refused to recognize or admit to any child-rearing deficiencies. The mother is more communicative with outsiders, as well as with the children, but Dr. Agosto found a "serious lack of desire or ability to interact" with the children, something that is "vital" to normal development.

Dr. Agosto performed extensive tests on the children as well and found substantial "development lags" in both. The older child, C.L.A., was not speaking words at age three and one half, and J.A. was functioning at the level of a six month old child when he was one year. Although Dr. Agosto discerned some of J.A.'s developmental lags to be "innate" (mental retardation), he concluded that the serious lack of stimulation and interaction between the parents and the children was the major cause of the underdevelopment. He also concluded that the parents were unlikely to respond to any further rehabilitative plans.

The other six witnesses were social workers who had also had extensive contact with the parents and the children. They included social counselors, a homemaker, and a special education teacher. In a nutshell, their testimony was that the parents were not able to properly care for themselves, let alone the children. The parents had no conception of proper hygiene, nutrition, health care, or financial budgeting. Their visits to the home found it to be filthy, "with a portable potty" (unemptied) in the middle of the living room, greasy car engine parts in J.A.'s bedroom, and the whole family appearing unbathed and in soiled clothes. More than one of the workers also testified that the parents not only failed to comply with much of the rehabilitation plan, they were not "particularly receptive" to the input of the workers. The father, Richard Allmer, was negative and

refused to attend parenting classes, even though the State provided transportation.

We hold there was substantial evidence to support the findings and conclusions of the trial court that both children are in need of care, the parents did not comply with the treatment plan, and the parents are beyond rehabilitation.

The final issue is whether the trial court committed reversible error by not allowing the parents to cross-examine Dr. Agosto regarding "the best interest(s)" of the children, especially J.A. Cf., section 41-3-406, MCA. The parents contend that J.A.'s development problems are innate and not attributable to their deficiences. Therefore they contend they should have been able to cross-examine Dr. Agosto regarding their contention that J.A., as a retarded child, would be better off staying with them, his natural parents.

We agree that the trial court should have allowed cross-examination regarding the "best interest(s)" of J.A., but we do not agree it was prejudicial error.

The trial court must hear evidence regarding the "best interest(s)" of the children during the dispositional hearing. Section 41-3-406, MCA. Because the trial court consolidated that hearing with the adjudicatory hearing under section 41-3-607(1), MCA, there was only one hearing. Therefore, it was error to exclude that evidence. However, it was not prejudicial error in light of the substantial evidence that the parents were seriously hindering the growth and development of the children, they were not complying with the rehabilitation plan for the children, and were not receptive to rehabilitation for themselves. The trial court

had ample evidence upon which to decide whether one or both of the children should stay with the parents.

The judgment is affirmed in all respects.

Hon. Thomas M. McKittrick,
District Judge, sitting for
Justice L. C. Gulbrandson

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices