FILED

11/01/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0299

DA 14-0299

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2016 MT 280

STATE OF MONTANA,

        Petitioner and Appellee,

   v.

ITEMS OF REAL PROPERTY OWNED
AND/OR POSSESSED BY MIKE CHILINSKI,

        Respondent and Appellant.

APPEAL FROM:    District Court of the Fifth Judicial District,
In and For the County of Jefferson, Cause No. DV-2013-31
Honorable Loren Tucker, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Christian D. Tweeten, Tweeten Law, PLLC, Missoula, Montana

        For Appellee:

        Steven C. Haddon, Jefferson County Attorney, Boulder, Montana

Submitted on Briefs:  August 24, 2015

Decided:  November 1, 2016

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1    Article II, Section 26 of the Montana Constitution guarantees to individuals that the right to a jury trial is "secured to all and shall remain inviolate." However, this inviolate right encompasses only non-equitable causes of action to which the right had already attached at common law when the Montana Constitution was adopted. At issue here is whether the right to a jury trial attaches to an in rem forfeiture proceeding arising from the alleged use of real property to manufacture dangerous drugs, but nonetheless unconnected to a state drug prosecution. The District Court ruled the right did not attach because a civil in rem forfeiture proceeding was an action in equity. Upon this basis, the court denied Chilinski's request for a jury trial in a civil proceeding to forfeit his home and four parcels of land. We reverse.

### FACTUAL AND PROCEDURAL BACKGROUND

¶2    In 2011, state authorities successfully prosecuted and incarcerated Chilinski for cruelty to animals. Crucial to that prosecution was the Jefferson County Sheriff's search of Chilinski's four parcels of property, including his residence, for evidence relating to his inhumane treatment of dogs. That search, conducted pursuant to a warrant, revealed not only an unlawful and cruel dog-breeding operation, but plain-view evidence of marijuana cultivation.

¶3    After discovering the marijuana grow operation, county authorities continued looking for evidence of animal cruelty, but also alerted the Southwest Montana Drug Task Force to the marijuana cultivation. The Task Force then procured its own warrant and conducted its own search, separate from the county authorities investigating

2

violations of animal cruelty. The Task Force's search for evidence of dangerous drugs, which later expanded under a second warrant, allegedly uncovered more than three hundred marijuana plants and over three pounds of processed marijuana on Chilinski's property.

¶4 As a result of these discoveries, the State initiated a forfeiture proceeding in October of 2011 against Chilinski's property, but the scale of his alleged grow operation drew the attention of federal authorities. The State suspended its proceeding against Chilinski on July 31, 2012, in deference to the United States bringing an earlier action on May 2, 2012. The federal indictment charged Chilinski with production of dangerous drugs and included a forfeiture provision. The record indicates Chilinski was convicted of manufacturing marijuana in the United States District Court for the District of Montana, but that federal authorities abandoned the accompanying forfeiture action for unknown reasons.

¶5 After the federal prosecution for forfeiture of Chilinski's property had been abandoned, the State resumed its civil forfeiture proceedings in June of 2013 pursuant to § 44-12-201, MCA (2013), et seq.—Montana's civil forfeiture statute. This statutory scheme allowed for property used in the manufacture of dangerous drugs to be seized upon a showing of probable cause, and then forfeited to the state following a summary hearing. Importantly, the statute mandated that the proceeding be heard only before a

3

judge, precluding the use of a jury.[1]  In its 2015 session, the Legislature repealed this provision and replaced it with § 44-12-207, MCA, et seq., which does not mandate that the trial be before a judge.

¶6      At Chilinski's forfeiture hearing held in the Fifth Judicial District Court on January 22, 2014, Chilinski appeared pro se and presented a multitude of theories why he should not lose his property.  Although his presentation was disjointed and incoherent, his most cogent and meritorious argument was that the forfeiture statute violated his right to a jury trial guaranteed to him by Article II, Section 26 of the Montana Constitution and the Seventh Amendment to the United States Constitution.  Chilinski clearly requested in his complaint a jury trial "on all issues so triable," and argued that these constitutional provisions entitled him to a trial by jury before his property could be forfeited to the state. At the hearing, the court explained to Chilinski that the State's complaint for civil forfeiture was based in equity and that, therefore, Chilinski had no right to be heard by a jury.  The court reasoned that the proceeding was to determine title, which was an equitable action and thus outside the scope of the right to a jury trial.  The District Court conducted the hearing without a jury and concluded that Chilinski used his property to assist in the production and manufacture of illegal drugs.  The District Court forfeited Chilinski's property to the State.  Chilinski appeals the court's denial of his right to a jury trial.  For purposes of appeal, this Court appointed counsel on Chilinski's behalf, who has

---

[1] Section 44-12-203(3), MCA (2013), provides "[i]f a verified answer is filed within 20 days, the forfeiture proceedings must be set for hearing without a jury no sooner than 60 days after the answer is filed."

4

appeared pro bono.[2]  Having found adequate grounds pursuant to Article II, Section 26 of Montana's Constitution to grant Chilinski the right to a jury trial, we decline to examine the same right as it might exist under the Seventh Amendment to the United States Constitution.  We restate the issue as follows:

> *Whether § 44-12-203(3), MCA (2013), violates Article II, Section 26 of Montana's Constitution by depriving individuals of the right to a trial by jury.*

## STANDARD OF REVIEW

¶7      This Court's authority to review constitutional questions is plenary.  *Williams v. Bd. of Cnty. Comm'rs.*, 2013 MT 243, ¶ 23, 371 Mont. 356, 308 P.3d 88.  Legislative enactments are presumed to be constitutional, and the party challenging the provision has the burden of proving beyond a reasonable doubt that it is unconstitutional.  *Williams*, ¶ 23.  We review a district court's conclusions regarding the constitutionality of a statute for correctness.  *Williams*, ¶ 23.

## DISCUSSION

¶8      This Court has not previously considered the constitutionality of that part of § 44-12-203(3), MCA (2013), which denies a jury trial in forfeiture proceedings.  It is well-established that although Article II, Section 26 of Montana's Constitution provides that "[t]he right of trial by jury is secured to all and shall remain inviolate," the right to jury trial encompassed by § 26 embraces only those causes of action "in which the right was enjoyed when the constitution was adopted."  *Supola v. Mont. DOJ, Drivers License Bureau*, 278 Mont. 421, 424-25, 925 P.2d 480, 482 (1996) (quoting *In re C.L.A.*, 211

---

[2]  Chilinski, in a civil forfeiture proceeding, is not entitled to a Public Defender, in either the trial proceeding or on appeal.  Section 47-1-104, MCA.

Mont. 393, 396, 685 P.2d 931, 933 (1984)). Montana's 1889 Constitution codified and preserved all existing common law rights to a jury trial. Those rights were then re-codified and protected in Section 26 of Montana's 1972 Constitution. *In re C.L.A.*, 211 Mont. at 396, 685 P.2d at 933. In *Supola*, we rejected the petitioner's claim that § 26 provides a right to jury trial in every controversy and recognized that a party has never had a jury trial right in a purely equitable action. *Supola*, 278 Mont. at 425, 925 P.2d at 482. In *Supola*, we examined the 1972 constitutional convention history of Section 26 and observed that delegates at the 1972 convention proposed an amendment which would have extended the Section 26 guarantee to actions in equity, but that the amendment failed on the floor. *Supola*, 278 Mont. at 424-25, 925 P.2d at 482.

¶9     While we confirmed in *Supola* that Section 26 does not apply to purely equitable actions, we recognized that issues of both equity and law could become intertwined in the same action, making it difficult to preserve the right to jury in non-equitable claims. *Supola*, 278 Mont. at 425, 925 P.2d at 482. The distinctions between law and equity originate from the bifurcated judiciary of England, where, prior to the modern era, chancery courts sat in equity, while the King's Bench and other courts sat in law. Equity courts were usually ecclesiastically-based and keepers of "the king's conscience," providing ethical or morality-based remedies in the absence of an adequate remedy at law. These once disparate tribunals, equity courts and courts of law, are said to have since "merged" in the United States, and there is now only a single judiciary that sits in both law and equity. *See* Fleming James, Jr., *Right to a Jury Trial in Civil Actions*, 72 Yale L.J. 655, 655-75 (1963); and *United States v. One 1976 Mercedes Benz*, 618 F.2d

6

453, 457 (7th Cir. 1980). Nonetheless, where legal and equitable claims are bound together in the same case, the right to a jury trial attaches to the legal claims, and "must not be infringed either by trying the legal issues as incidental to equitable ones or by a court trial of a common issue between the claims." *Supola*, 278 Mont. at 425, 925 P.2d at 482 (quoting *Gray v. City of Billings*, 213 Mont. 6, 13, 689 P.2d 268, 272 (1984); *Ross v. Bernhard*, 396 U.S. 531, 537-38, 90 S. Ct. 733, 738 (1970)). *Supola* thus provides that while Section 26 does not apply to an action purely in equity, the right to a jury trial on legal issues remains inviolate and may not be compromised because it is combined with equitable issues in one action. Accordingly, Section 26 may be constrained in only two ways: (1) it does not apply to purely equitable actions; and (2) it does not apply to those actions at law that did not have the right to a jury trial associated with them prior to the adoption of the 1889 constitution.

I.    *Whether the statutory forfeiture proceeding here is purely in equity.*

¶10    The District Court held Chilinski was not entitled to a jury trial because the proceeding was limited to a determination of title which, the District Court concluded, was a cause of action based purely in equity. We first observe that generally, where title and possession to real property are at issue, the action is legal and entitles a party to a jury trial. "It has always been the rule in this jurisdiction, both under the territorial and state governments, that where the right of possession to real estate is at issue, whether the action be based upon a claim of legal title, or upon a mere possessory right, either party is entitled to a trial by jury. Such an action is strictly one at law." *Mont. Ore Purchasing Co. v. Boston & Mont. Consol. Copper & Silver Mining Co.*, 27 Mont. 536, 538, 71

7

P. 1005, 1006 (1903). Even though the equitable power of the court may be invoked to aid an action at law by removing, for example, some obstruction to the legal title or by preserving the property pending ascertainment of the title, the action remains one at law. *Mont. Ore Purchasing*, 27 Mont. at 536, 71 P. at 1005. We therefore disagree that this proceeding is purely equitable or that it is appropriately characterized as involving *only* a determination of title. The nature of the instant proceeding requires more than such a cursory examination. In conducting our own detailed examination of the action, we note that forfeiture statutes operate to transfer property rights to the state, as a penalty against the owners for misuse of the property. The District Court here placed too narrow an interpretation on the issue by characterizing the proceeding as only one of determining title.

II.    *Did the right to a jury trial exist at common law for civil in rem proceedings prior to the 1889 ratification of Montana's Constitution?*

¶11    While this proceeding has attributes of a criminal action and is intertwined with the underlying criminal prosecution, the complaint does not charge a criminal offense and is more appropriately described as a proceeding in rem against Chilinski's property. *See State ex rel. Prato v. District Court*, 55 Mont. 560, 565, 179 P. 497, 499 (1919). As such, *Mont. Ore Purchasing*, which addresses title and right of possession, is not controlling. Neither Chilinski nor the State offer any dispositive authority in Montana on the question of whether there is a right to a jury trial for civil in rem forfeiture actions, nor has our independent research unearthed any controlling Montana precedent. We explained, however, in *Mont. Ore Purchasing* that,

8

It must not be overlooked that the right of trial by jury guarantied [by the Seventh Amendment to the United States Constitution] is the right as it existed at the common law; that is, in that class of cases in which there was no impediment in the way of complete and adequate redress by proceeding according to the course of the common law.

*Mont. Ore Purchasing*, 27 Mont. at 540-41, 71 P. at 1007. Clearly, in rem forfeiture proceedings existed in the common law, under English and American practice, at the time Montana's 1889 Constitution was ratified. Furthermore, it is the historical right of trial by jury enjoyed at the time Montana's Constitution was ratified in 1889 which is preserved. *Supola*, 278 Mont. at 424-25, 925 P.2d at 482. We recognize that the right to a jury trial under the Seventh Amendment to the United States Constitution is not applicable to the states. However, the underlying analysis and rationale employed in federal courts and other states when deciding whether a right to jury trial exists in civil forfeiture proceedings is helpful to our inquiry. It is necessary, therefore, to ascertain what the rule of the English common law upon this subject was in 1889, and we look to federal jurisprudence and our sister states for guidance.

¶12 In 1776, forfeiture existed in England both at common law and by statute. At common law, an inanimate object described as "deodand" could be forfeited for causing a person's death. Also at common law, property could be forfeited on the owner's conviction of treason or a felony. English law provided for statutory forfeitures of objects used in the violation of customs and revenue laws. *Austin v. United States*, 509 U.S. 602, 611-13, 113 S. Ct. 2801, 2806-07 (1993). Prior to the American Revolution, jurisdiction over the forfeiture of objects used in violation of law was exercised by the English Court of Exchequer and the Admiralty Court. *C.J. Hendry Co. v. Moore*, 318

9

U.S. 133, 137, 63 S. Ct. 499, 501 (1943). Cases in Admiralty Court proceeded without a jury; in contrast, cases in the Court of Exchequer proceeded before a jury. *See One 1976 Mercedes Benz*, 618 F.2d at 464 (The distinction between practicing in courts of Admiralty, where forfeiture actions were heard without a jury, and practicing in the common law courts of Exchequer, where forfeiture actions were routinely before a jury, is well-known.); *People v. One 1941 Chevrolet Coupe,* 231 P.2d 832, 839 (Cal. 1951) ("There are reports of many cases in the Court of Exchequer in which articles used in violation of law were forfeited to the Crown pursuant to statute, in all of which the cause was tried by jury."); *Commonwealth v. One (1) 1984 Z-28 Camaro Coupe,* 610 A.2d 36, 41 (Pa. 1992) ("[I]n England, forfeiture actions in the Courts of Exchequer were tried before a jury, and in the United States, forfeiture actions were heard before juries in cases where courts of Exchequer would have had jurisdiction."); *C.J. Hendry*, 318 U.S. at 137, 63 S. Ct. at 501 ("Forfeiture to the Crown of the offending object, because it had been used in violation of the law, by a procedure *in rem* was a practice familiar not only to the English admiralty courts but to the court of Exchequer."). In time, following the historic struggle between admiralty and common law courts, courts of Exchequer began to exercise concurrent jurisdiction with the admiralty courts even for in rem proceedings for the forfeiture of vessels on navigable waters.

¶13    The American colonies did not establish a Court of Exchequer. Instead, the common law courts absorbed that court's jurisdiction. *C.J. Hendry,* 318 U.S. at 139, 63 S. Ct. at 502-03. Consequently, American colonial courts, sitting as common law courts, generally heard actions involving forfeitures on land. *See Austin*, 509 U.S. at 613, 113

10

S. Ct. at 2807 ("'[l]ong before the adoption of the Constitution the common law courts in the Colonies . . . were exercising jurisdiction *in rem* in the enforcement of [English and local] forfeiture statutes'") (quoting *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 683, 94 S. Ct. 2080, 2091 (1974)); *C.J. Hendry*, 318 U.S. at 143, 63 S. Ct. at 505 ("[T]here is ample support for the conclusion that in the seaboard states forfeiture proceedings in rem . . . were an established procedure of the common law courts before the Revolution."); *One 1976 Mercedes Benz*, 618 F.2d at 466 ("The conclusion appears inescapable that both English and American practice prior to 1791 definitely recognized jury trial of in rem actions at common law as the established mode of determining the propriety of statutory forfeitures on land for breach of statutory prohibitions."); *One 1941 Chevrolet*, 231 P.2d at 842 ("The common-law courts in the Colonies and in the states during the period of Confederation exercised jurisdiction in rem in the enforcement of forfeiture statutes. In general the actions . . . were tried by jury. . . ."); *One 1984 Z-28 Camaro Coupe*, 610 A.2d at 41 ("[I]n the United States, forfeiture actions were heard before juries in cases where Courts of Exchequer would have had jurisdiction."). If the forfeiture took place on navigable waters, either the admiralty or common-law courts had jurisdiction. *C.J. Hendry*, 318 U.S. at 139, 63 S. Ct. at 503; Franklyn C. Setaro, *The Formative Era of American Admiralty Law*, 5 N.Y.L.F. 9, 26 (1959). Like English common-law courts, and unlike admiralty courts, colonial common-law courts provided for trial by jury. *C.J. Hendry*, 318 U.S. at 139-40, 63 S. Ct. at 503.

¶14    In addition to federal courts, state courts considering in rem forfeiture statutes similar to Montana's statute have reached similar conclusions. The Idaho Supreme Court

explained that statutory forfeiture actions existed in both English and American practice and thus provided for a trial by jury when the Idaho constitution was adopted in 1889. *Idaho Dep't of Law Enforcement by & ex rel. Cade v. Real Prop. Located in Minidoka Cnty.*, 885 P.2d 381, 386 (Idaho 1994). The South Dakota Supreme Court invalidated a forfeiture statute substantially similar to § 44-12-203(3), MCA (2013), rejecting the state's argument that because the drug forfeiture statute did not exist at the time the constitution was adopted, the defendant was not entitled to a jury trial. *State v. One 1969 Blue Pontiac Firebird*, 737 N.W.2d 271, 277 (S.D. 2007). In Florida, the Supreme Court adopted the historical analysis of *One 1976 Mercedes Benz* and concluded that common law courts in 1845 recognized the right to a jury trial in civil forfeiture proceedings. *In re 1978 Chevrolet Van*, 493 So.2d 433, 436 (Fla. 1986). In *State v. One 1990 Honda Accord*, the New Jersey Supreme Court found drug forfeiture cases allowed for a jury trial even though "forfeiture never existed at common law [in New Jersey] and remains a disfavored remedy." *State v. One 1990 Honda Accord*, 712 A.2d 1148, 1150 (N.J. 1998). The New Jersey court explained,

> Although forfeiture depends on a statute for its existence, it remains subject to common-law principles. When analyzing the right to trial by jury, the term "common law" refers to those principles of English law that evolved in the common-law courts such as the Court of the Exchequer, as opposed to those applied in the Admiralty, Chancery, or Ecclesiastical Courts. *People v. One 1941 Chevrolet Coupe*, 37 Cal. 2d 283, 231 P.2d 832, 836 (1951); *In re Forfeiture of 1978 Chevrolet Van*, 493 So.2d 433, 435 (Fla. 1986); *Commonwealth v. One 1984 Z-28 Camaro Coupe*, 530 Pa. 523, 610 A.2d 36, 39 (1992); *see also* William B. Stoebuck, *Reception of English Common Law in the American Colonies*, 10 Wm & Mary L. Rev. 393 (1968) ("'Common law' refers to that body of governing principles, mainly substantive, expounded by the common-law courts of England in deciding cases before them."). Hence, *the fact that common-law forfeiture did not*

*become part of New Jersey common law does not predetermine whether statutory forfeiture was subject to trial by jury in the colonial common-law courts. The subject forfeiture, which involves the seizure on land of innocent property, is the type of case in which the owner would have been entitled to a jury trial in the common-law courts* of colonial New Jersey.

*One 1990 Honda Accord*, 712 A.2d at 1150-51 (emphasis added).

¶15    Lastly, Blackstone discussed property forfeiture and the right to trial by jury in some detail.  The forfeiture of property, even chattels, was a penalty reserved for only the most serious of crimes.  Forfeiture of land was particularly reserved for treason, felony, and other infamous crimes.  2 Blackstone ch. 18, 268.  And for such crimes at common law, the right to a jury trial attached.  "Our law has therefore wisely placed . . . a trial by jury, between the liberties of the people, and the prerogative of the crown."  4 Blackstone Ch. 27, 350.  Blackstone cautioned too, that the right of trial by jury might one day be compromised "by introducing new and arbitrary methods of trial by justices of the peace, commissioners of the revenue, and courts of conscience" in order to avoid proceedings that were cumbersome, expensive, inconvenient, or time-consuming; however, he warned that "delays and little inconveniences in the forms of justice, are the price that all free nations must pay for their liberty in more substantial matters."  4 Blackstone Ch. 27, 350-51.

¶16    After consideration of both American and English common law, federal jurisprudence, and decisions from our sister states that have considered the issue in cases involving similar statutes, we join the majority of states and federal courts and conclude

that there is a right to trial by jury guaranteed by Section 26 of Montana's Constitution in an in rem forfeiture proceeding under § 44-12-201, MCA (2013), et seq.[3]

¶17   We are compelled, nonetheless, to address the State's various arguments.  The State maintains ratification of Montana's Constitution in 1972 predated enactment in 1979 of § 44-12-201, MCA (2013), and, therefore, a right to a jury trial could not have been "re-codified" in Section 26 of the 1972 Constitution.  Additionally, the State argues, relying on *Kelly*, that a civil forfeiture proceeding is distinct from a criminal prosecution because it is a summary proceeding for which there was no trial by jury under the common law as "a matter of right."

¶18   The contention that a statutory provision, because it was enacted after ratification of the Montana Constitution in 1972, precludes the right of a jury trial from attaching to the statute's provisions, places too narrow an interpretation upon the issue.  The issue is not *when* the statute was enacted, but rather, whether forfeiture proceedings existed *generally* at common law and whether civil forfeiture proceedings were in "the class of cases in which the right was enjoyed when the constitution was adopted."  *Supola*, 278 Mont. at 424-25, 925 P.2d at 482, citing *In re C.L.A.*, 211 Mont. at 396, 685 P.2d at 933. Our inquiry is not informed by whether an action at common law was subsequently

---

[3] We recognize and have considered the rationale of those states finding there was no right to trial by jury in civil in rem forfeiture proceedings, namely: North Dakota, Minnesota, North Carolina, Tennessee, Georgia, Michigan, and Alabama have found a jury trial is not required in civil forfeitures.  *See State v. $ 17,515.00 in Cash Money*, 670 N.W.2d 826, 828 (N.D. 2003); *State v. One 1921 Cadillac Touring Car*, 195 N.W. 778, 780 (Minn. 1923); *State v. Morris*, 405 S.E.2d 351, 352-53 (N.C. App. 1991); *Helms v. Tenn. Dep't of Safety*, 987 S.W.2d 545, 547-49 (Tenn. 1999); *Swails v. Georgia*, 431 S.E.2d 101, 103 (Ga. 1993), *cert denied*, 510 U.S. 1011, 114 S. Ct. 602 (1993); *In re Forfeiture of $ 1,159,420*, 486 N.W.2d 326, 337 (Mich. App. 1992), *cert denied sub nom.*, *Hawkins v. Michigan*, 510 U.S. 867, 114 S. Ct. 189 (1993); *In re One Chevrolet Auto.*, 87 So. 592, 592-93 (Ala. 1921).

embodied by statute, be it a drug forfeiture statute or some other forfeiture statute. Although forfeiture proceedings may depend on a statute for existence, the inquiry is whether forfeiture existed at common law to which the right to a jury trial attached and not the date upon which the cause of action was embodied by statute.

¶19 The State's reliance on *Kelly* in support of its argument that there is no right to a jury trial in a forfeiture proceeding because it is summary in nature, is misplaced. In *Kelly*, the Court addressed whether forfeiture of seized liquors should be determined by a jury. *Kelly*, 57 Mont. at 127-30, 187 P. at 637-38. *Kelly*, however, dealt with the rights of a party claiming property that was contraband itself—alcohol—and possessed in violation of the Prohibitory Enforcement Act. The Court explained that from the time of seizure, the liquors are in the custody of the state, and if a violation of the liquor laws has occurred, then the liquor is "contraband," subject to forfeiture, "and the question of ownership is altogether immaterial." *Kelly*, 57 Mont. at 129, 187 P. at 638. Although the proceeding was "against the liquors themselves for their condemnation as forfeited property" and characterized by the Court as an in rem summary proceeding, the Court explained, "[i]t would not be questioned by anyone that if forfeiture of the liquors were a part of the penalty imposed upon a defendant for a violation of the law, the right of trial by jury would obtain . . . ." *Kelly*, 57 Mont. at 130, 187 P. at 638.

¶20 We find *Kelly* distinguishable from the facts and circumstances here. First, *Kelly* dealt with a different class of property, *prima facie* contraband, and not "innocent" property which has been or is intended to be utilized in furtherance of an unlawful activity. Courts have recognized such a distinction and found that the seizure of innocent

15

property, as compared to the seizure of contraband, "is the type of case in which the owner would have been entitled to a jury trial in the common-law courts . . . ." *One 1990 Honda Accord*, 712 A.2d at 1151.  Under the English common law, "cases involving the forfeiture of innocent property generally resulted in a trial by jury."  *One 1990 Honda Accord*, 712 A.2d at 1157.

¶21    Second, § 44-12-102(i), MCA (2013), provides that real property which "is directly used or intended to be used in any manner or part to commit or facilitate . . . a violation of Title 45, Chapter 9, *that is punishable by more than 5 years in prison*" is subject to forfeiture."  (Emphasis added.)  Unlike in *Kelly*, where the liquor itself was contraband (similar to Chilinski's marijuana plants being contraband), property subject to forfeiture pursuant to § 44-12-102(i), MCA (2013), is directly tied to an enhanced penalty provision of the underlying criminal statutes.  The criminal nature of the forfeiture proceeding is thus inescapable.  It is further exemplified by § 44-12-103, MCA (2013), providing for the manner in which property may be seized:

> (1) A peace officer *who has probable cause to make an arrest for a violation of Title 45, chapter 9*, probable cause to believe that a conveyance has been used or is intended to be used to unlawfully transport a controlled substance, or probable cause to believe that a conveyance has been used to keep, deposit, or conceal a controlled substance shall seize the conveyance used or intended to be used or any conveyance in which a controlled substance is unlawfully possessed by an occupant.  [(Emphasis added.)]

In examining these forfeiture provisions, it is hard to ignore their penological basis.  But for the forfeiture statute's placement outside the provisions of the criminal code in Title 45, forfeiture would be inseparable from the penalty imposed in the underlying criminal prosecution.

16

¶22 Upon review of the record, it is clear that the remedy the State sought, forfeiture of Chilinski's property, had as its purpose the imposition of a penalty. In its "Notice to Defendant Re: Criminal Charges," the State represented that it "does not intend to proceed criminally against Defendant for his underlying conduct . . . [of] criminal manufacture of dangerous drugs, if the civil forfeiture process is successful. [And the State] specifically represents it will pursue no further criminal charges against Defendant for his conduct giving rise to his animal cruelty convictions." The State's position suggests it was pursuing a statutory forfeiture proceeding in lieu of a criminal prosecution against Chilinski; that is, that the forfeiture proceeding would protect the State's penological interest in Chilinski. The State's actions were consistent with the purpose underlying the statute. A review of the legislative history of § 44-12-201, MCA (2013) et seq., reveals that the purpose behind the act was to provide "an added tool" for law enforcement. *Minutes on Consideration of Senate Bill 482 Before the S. Judiciary Committee*, 46th Leg. Sess. (Mont. 1979). Where the underlying purpose of an action serves as a penalty, the action is not in equity. *See Supola*, 278 Mont. at 426, 925 P.2d at 482 (where a driver's license suspension statute and hearing had no penological purpose, it denoted a proceeding in equity); *Kelly*, 57 Mont. at 130, 187 P. at 638 (when a forfeiture is part of the penalty imposed upon a defendant for violation of the law, the matter is not in equity and the right of trial by jury attaches).

¶23 Our determination that Section 26 of the Montana Constitution guarantees a right to jury trial for civil in rem forfeiture proceedings does not require that the forfeiture proceeding against Chilinski be dismissed. When only a portion of a statute is

unconstitutional and the remainder would still fulfill the statute's underlying legislative intent, the unconstitutional portion may be stricken in accordance with principles of statutory interpretation, leaving the remaining constitutional portions of the statute enforceable and intact. *Williams*, ¶ 24; *Mont. Auto. Ass'n v. Greely*, 193 Mont. 378, 399, 632 P.2d 300, 311 (1981). Section 44-12-203(3), MCA (2013), which denies a jury trial, is not an indispensable part of the statute and may be stricken therefrom. The remainder of the statute is fully operative in the absence of that portion and we express no opinion as to the constitutionality of sections not before us on appeal.

## CONCLUSION

¶24 Section 44-12-203(3), MCA (2013), denied Chilinski the right to be tried by a jury, in violation of the guarantee to trial by jury provided by Article II, Section 26 of the Montana Constitution. The District Court erred when it denied Chilinski the right to a trial by jury in these civil in rem forfeiture proceedings. We reverse and remand for a new trial consistent with this Opinion.

/S/ LAURIE McKINNON

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ JIM RICE

18